**People of the State of Illinois, Plaintiff-Appellee, v. Albert Dixon, Defendant-Appellant.**

Gen. No. 51,088.

First District, Third Division.
March 23, 1967.

Edward L. Fleming, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Truman Larrey, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant was convicted on two charges of armed robbery and received sentences of two to seven years on each, which sentences were to run concurrently. This case was tried by the court without a jury.

It will be necessary to separate the charges by indictment number and the victim.

### Indictment No. 65–804—Victim—Richard Budnik

The victim, Richard Budnik, testified that on March 2, 1965, at about 6:00 o'clock in the evening, he was near the intersection of 21st Street and Michigan Avenue. He had parked his car in a parking lot and then proceeded toward the Chicago Technical College at 2000 South Michigan Avenue. He was near 2036 South Michigan Avenue when he was attacked by two male Negroes. As he approached a doorway the two male Negroes, who had been walking ahead of him, turned around and accosted him. The defendant had a knife in his hand and one of the men said, "Give me your money, man." The defendant held the knife to Budnik's stomach and took the money and his wristwatch. Budnik also testified that his stomach was cut approximately six inches but did not draw blood. It was more like a scratch. The defendant took approximately $10 or

$20 in United States currency. The value of the wrist-watch was approximately $100. Budnik then proceeded toward the school and the defendant and his accomplice ran south. At the school he called the police, to whom he made a full report.

On March 8, 1965, he had occasion to be at Detective Area 1 Robbery, where a showup was held between 6:00 and 6:30 p. m. When asked if he saw anyone there he knew, he answered that he saw the defendant Dixon. Another showup was held between 10:00 and 11:00 o'clock that night. There were five or six men in the showup. Budnik identified the defendant a second time. He testified that after the second showup he had a conversation with the defendant in the presence of Detective Bonham and "a Chinese fellow." Budnik testified that he asked the defendant what happened to his watch and the defendant told him that he had sold a gold watch, Lord Elgin, which was Budnik's watch, someplace on 63rd Street. When Budnik was asked if he was certain that the defendant was the man, he answered in the affirmative. Budnik further testified as to having given a previous approximate description of the two Negroes who robbed him. He said both of them wore black leather jackets, about three-quarter length; that one definitely had a hat. It looked like he had a mustache and a small beard. This man was the shorter of the two and is the defendant here. He wasn't sure whether it was a mustache or whether the defendant just hadn't shaved, and had a beard. He also described the defendant as being between 5'8" and 5'11".

Police Officer Hill testified that after the police line-up Budnik and defendant were standing face to face and the defendant told Budnik that he took the watch that belonged to Budnik, and that the defendant said he had pawned this watch in a pawnshop on 63rd Street.

The defendant Dixon denied he committed the armed robbery of Budnik and said that he was at 26th and

Prairie on March 2, 1965, where a friend named Joseph Banks lived. He also denied having admitted the taking of the watch from Budnik. He denied also having admitted to Budnik in the presence of police officers that he had taken the watch or had pawned the watch in a pawnshop on 63rd Street.

The defendant contends (1) that the trial judge erred in cross-examining the defendant, and (2) the defendant was not proven guilty beyond all reasonable doubt of the charge of armed robbery.

 As to the first point, the Supreme Court said in People v. Trefonas, 9 Ill2d 92, 100, 136 NE2d 817, "The extent to which a judge may indulge in the examination of witnesses largely rests in his discretion but in its exercise he must not forget the function of a judge and assume that of an advocate." The court in this bench trial asked a few questions of the defendant while he was a witness. The questions asked by the court were where he had been on two dates, concerning which there had been testimony, and how he remembered his whereabouts on those two dates. The only other significant questions put to the defendant by the court were whether he believed that the police officers and the victim were lying when they testified that the defendant had admitted in their presence that the defendant had held up Budnik on March 2, and that the watch he had taken from Budnik he had pawned in a pawnshop on 63rd Street. We are satisfied that the court did not err when it put these few questions to the defendant, and such questioning cannot be construed as cross-examination, nor do we feel that by the questioning by the judge, he had in any way assumed the role of prosecutor. The transcript covers 114 pages of testimony. The questioning by the court, which was objected to, covers approximately two and one-half pages. There is nothing in this record to indicate that the court at any time forgot the function of a judge,

but it indicates rather that he merely inquired of the defendant as to his version of the case in order to arrive at his decision. A trial judge has the right to question witnesses in order to elicit the truth or to bring enlightenment on material issues which seem obscure. People v. Palmer, 27 Ill2d 311, 189 NE2d 265; People v. Wesley, 18 Ill2d 138, 163 NE2d 500. The length or nature of such examination depends on the circumstances of the case and even a rather extensive examination may be justified if the court has reason to believe that a witness is not telling the truth in a nonjury case. People v. Giacomino, 347 Ill 523, 180 NE 437. The questions put by the court did not indicate bias or prejudice on the part of the judge.

As to the second point raised by the defendant, namely, that the defendant was not proven guilty beyond all reasonable doubt, the defendant urges that on cross-examination of Budnik he was unable to give an accurate description of the defendant to the police immediately after the robbery. It is contended by the defendant that Budnik was not able to state with certainty whether the defendant had a mustache or a beard or both a mustache and beard or just needed a shave. He did not know the man's exact height or what type of head covering he was wearing. He also points out that Budnik was uncertain in his identification of the defendant, and had the defendant put on a black leather coat, and did not identify him definitely until after the coat had been placed on the defendant. Budnik, however, testified that he identified and picked out the defendant from a lineup of five to six men at the police station on March 8, 1965, at 6:00 to 6:30 p. m., and again at 10:00 to 11:00 p. m. on the same date; that after the second police lineup the defendant, in his presence, admitted selling the victim's Elgin watch.

■■■ Police Officer Hill testified that in his presence the defendant had admitted he had taken the watch be-

336

longing to Budnik and pawned it in a pawnshop on 63rd Street. The testimony of one witness as to identification, if positive, and the witness credible, is sufficient to convict, even though the testimony is contradicted by the accused. People v. Wilson, 1 Ill2d 178, 115 NE2d 250; People v. Williams, 12 Ill2d 80, 145 NE2d 29. The record amply shows that the complaining witness had opportunity to observe the defendant during the commission of the crime, and at the trial the complaining witness positively identified the defendant both on direct and cross-examination. The identification of the defendant by the victim was clear, positive and convincing and was corroborated by the oral confession of the defendant that he had taken the watch from Budnik and pawned it. The defendant argued that his identification by Budnik was positive only after a leather jacket had been placed on the defendant. In People v. Pecho, 362 Ill 568, 573, 200 NE 860, the court said:

"The identification of the defendants is not shown to have been impaired by the method of having them lined up with other persons at the detective bureau. The hat was a part of the clothing worn by one of the robbers and to supply an additional identifying element it was placed on the head of one of the defendants at the request of the person robbed. It does not appear why such action would be improper. . . . The circumstances under which the identification was made were before the jury and at most would affect only the credibility of the witnesses. . . . In view of the positive identification by three witnesses, the circumstances under which the showup was conducted are not such as to require a reversal of the judgment on that account."

 In the instant case the identification was positive, and that, together with the testimony of Budnik and the police officer, who testified to the oral confession

337

by the defendant of the commission of the crime, and that he had pawned the Elgin watch taken at the site of the crime, is sufficient to prove beyond a reasonable doubt the guilt of the defendant. It is well established in this state that since the accused can expressly admit away his whole case by pleading guilty, he can admit away any part of it. People v. Pilewski, 295 Ill 58, 128 NE 801. In this same connection the defendant argues that his oral confession alone is insufficient to establish the "corpus delicti," in that the identification testimony is too vague and uncertain to corroborate his oral confession. It is the burden of the People to prove beyond a reasonable doubt not only the commission of the crime charged but also that it was committed by the accused. People v. Ashley, 18 Ill2d 272, 164 NE2d 70. While an uncorroborated confession is insufficient to convict, it is not required that the "corpus delicti" be proven beyond a reasonable doubt exclusively by evidence aliunde the confession or admissions of the accused, nor is it necessary that it be established by evidence other than that which tends to connect the defendant with the crime. People v. O'Neil, 18 Ill2d 461, 165 NE2d 319. Both the existence of the crime and the guilt of the defendant may be proven by the same evidence, the test being whether the whole evidence proves the facts that a crime was committed and that the accused committed it. People v. Gavurnik, 2 Ill2d 190, 117 NE2d 782.

From an examination of this record we are satisfied that the State has met its obligation in proving not only that a crime had been committed but that the defendant here was the perpetrator of that crime. The conviction of the defendant under indictment No. 65–804 is therefore affirmed.

**Indictment No. 65–805—Victim—Charles Dunn**

On February 21, 1965, Charles Dunn, at approximately 2:30 a. m., was held up by a Negro with a knife and

robbed of an Elgin watch, a wallet and $17 in United States currency, at 22nd Street and Michigan Avenue. Thereafter, on March 8, 1965, Mr. Dunn identified the defendant as the robber and also identified a wallet found on the defendant as the wallet taken from him. The victim testified that the defendant admitted the robbery and the taking of the wallet from him. Mr. Dunn had been drinking the night of the robbery and previously had been in a mental institution for eighteen years. At the time of the robbery the victim was stopped by the defendant, who put a knife to his throat and then took from him a black wallet with a red lining, the wristwatch and the currency. When the victim was pushed toward a building by the defendant he ran across the street and caught a bus to the police station, where he reported the robbery. The defendant, Albert Dixon, was arrested on March 7, 1965, and had in his possession a black wallet with a red lining. He was arrested by Police Officer Gary Hill. On March 8, 1965, between 11:00 and 11:30 p. m., the victim identified the defendant at a police station in a police lineup of ten men. After the lineup, and in the presence of Officer Bonham, Officer Hill and the defendant, the victim, Charles Dunn, identified his wallet as black with a red lining.

Charles Dunn, the victim, testified that he got to the 606 Club at 8:00 o'clock that evening. He had watched the show and drank Old Style Beer. He testified that he had about six beers. He did not know if it was nine beers. He was somewhat confused and asked police how to get to Randolph Street and he ended up at 22nd and Michigan. He testified that he was not drunk, and that it would take four or five quarts to make him drunk. He further testified that he had been in a mental institution for eighteen years but that he had received an absolute discharge on April 12, 1965.

339

The defendant contends that he was not proven guilty beyond all reasonable doubt of the charge of armed robbery of Charles Dunn.

At the trial, Officer Bonham, testifying for the State, stated that after the police lineup on March 8, 1965, Charles Dunn identified the black wallet with the red lining as belonging to him, and that in his presence the defendant looked at the victim and said that was the wallet he had taken from Dunn on the night of the robbery.

Officer Hill, also a State's witness, testified that he arrested the defendant and that the black wallet with the red lining was found on the defendant. He also testified that he was present at the police lineup when the complaining witness identified the wallet that Officer Bonham was holding, and that the defendant, who was also present, said that it was the wallet that the defendant had taken from the complaining witness during the robbery.

The defendant denied committing the armed robbery of Charles Dunn and testified that on February 21, 1965, he was with his friend, Joseph Banks. The defendant admits that the wallet was found on his person when he was arrested, and that Mr. Dunn identified the wallet as his. The defendant, however, testified that he bought the wallet several months prior to the robbery. Mr. Dunn identified the wallet by the fact that it had rips in the middle and a missing strip.

The defendant contends that the victim was in a state of drunkenness and that his positive identification of the defendant is incredible. The defendant also argues that the victim admitted having been confined in a State mental institution for eighteen years; that he was only 23 years old and for almost all of his life he had been confined to a mental institution, and that at the time

of the robbery he had not as yet received his absolute discharge.

It is argued, also, that the alleged confession of the defendant is uncorroborated by any circumstances inspiring belief in its truth and therefore insufficient to convict. The defendant further argues that he was identified only after someone, presumably the police, pointed out the defendant to the complaining witness, and having been induced by police suggestion the identification is inadequate.

People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599, involved a claim that the identification was induced by police suggestion and therefore inadequate. However, the court there held that even though the identification was induced by police suggestion that the guilty party is in custody, such procedure does not completely destroy the evidence of identification, but affects only its weight and credibility.

In People v. Hynes, 26 Ill2d 472, 187 NE2d 252, the victim positively identified the defendant at the trial but was unable to identify him at a police lineup six months after the robbery. The court there held that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt. In the case before us the defendant assumes that the police identified the defendant to the victim, although the record does not so show. The identification of the defendant was supported by the finding of the wallet, with the distinguishing marks on it, on the defendant at the time of his arrest and by the defendant's oral confession.

■■■■■■ In answer to the defendant's contention, that since the victim had been drinking and stated he was confused, therefore his identification of the defendant is not worthy of belief, the State points out that immediately after being robbed the victim ran across the street, caught a bus and went directly to the police

station to report the robbery. It is also pointed out by the State that the victim, having lived in Dixon, Illinois, for eighteen years, was not too familiar with Chicago and in following directions to get to an elevated station on Lake Street he went in the wrong direction. The State also points out that by going directly to the police station after the robbery the action of the victim was not that of a drunken or confused person but that of an outraged citizen who had just had a crime perpetrated upon him. The trial judge, while not relying entirely on the identification testimony of the complaining witness, nevertheless, gave due consideration to all of the evidence in the case in finding the defendant guilty. The complaining witness's testimony was not shaken upon cross-examination. As to the contention of the defendant that the victim was incompetent to testify, even though at the time of the trial he had received an absolute discharge from the hospital, the State points out that the test of the competency of a witness is one of intelligence and understanding. People v. Mueller, 2 Ill2d 311, 118 NE2d 1. In the absence of statute, one mentally affected or ill is not incompetent if he understands the nature of an oath, and has sufficient mental powers to give a correct account of what he has seen and heard. People v. Enright, 256 Ill 221, 99 NE 936. If a witness has the capacity to observe, recollect and communicate, he is competent, and his mental deficiency is considered only insofar as it affects the credit to be given his testimony. People v. Dixon, 22 Ill2d 513, 177 NE2d 224.

The testimony of the complaining witness in this case, regarding the details of the armed robbery, reveals a complete understanding, as well as his capacity to recollect and communicate.

The defendant finally argues that the uncorroborated oral confession is insufficient to establish

the corpus delicti. The rule is that if there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with the circumstances related in the confession, both may be considered in determining whether the corpus delicti is sufficiently proved in a given case. People v. Perfecto, 26 Ill2d 228, 186 NE2d 258. The question is whether the whole evidence proves the facts that a crime was committed and that the accused committed it. In this case the defendant admitted that the wallet was found on his person when he was arrested. He also admitted that the victim identified the wallet as his. The victim identified the defendant at the trial and at the police lineup. The torn or ripped part of the wallet was subsequently testified to by the victim, and there can be no question as to the identification of the wallet. Furthermore, the defendant told the complaining witness he remembered holding him up and that the wallet was his. This testimony is corroborated by the police officers who testified that the defendant said he remembered holding up the complaining witness and that this was his wallet.

From the foregoing we conclude that the evidence, together with the oral confession, sufficiently established the corpus delicti. The judgment of the conviction under Indictment No. 65–805 must therefore be affirmed.

Judgments affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.