**People of the State of Illinois, Plaintiff-Appellee, v. Willie Lee Mason, Defendant-Appellant.**

**Gen. No. 51,014.**

First District, Third Division.

August 3, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John Ward, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The trial court found Willie Lee Mason guilty of rape and sentenced him to the penitentiary for a term of one to ten years. He contends that his guilt was not proved beyond a reasonable doubt.

The prosecutrix, who was temporarily separated from her husband, lived with her four small children on the first floor of an apartment building. There were three apartments on this floor; she occupied the rear one and the defendant, Mason, lived alone in the middle one. A window in Mason's apartment was at a right angle to and about three feet from a window in the prosecutrix' living room.

On Sunday, April 25, 1965, she awakened about 4:30 a. m. Her month-old daughter, who was sleeping with her, started to cry and she went to the washroom to get the baby a bottle. Because she was alone with her children, she had left the lights on during the night and, as she entered the living room which was lighted, she saw a man standing by the window holding a cap over his face with his left hand. With his right hand he took a knife

from his pocket, opened it with his teeth, pointed it at her with a jabbing motion and directed her to go to the rear of the apartment. He followed her and turned off the lights in each room as he entered it. When she came to the bedroom she picked up her crying baby but he grabbed her hand and pulled her into the kitchen. Despite her pleas he pushed her down, took off an overcoat he was wearing, ordered her to remove her garments and had intercourse with her.

After he finished, he went to the living room but changed his mind and returned and, after warning her not to call the police and not to turn on the lights for 20 minutes, went out the back door. The prosecutrix waited a moment and then awoke her neighbors in the front apartment and told them that she had been raped. She asked the man who lived there to call the police and he got up, dressed and went out to do so. His wife accompanied the prosecutrix to her apartment. They went to the window in the living room which faced Mason's apartment. Her screen had been pulled back and the window pried open. His window was up and the screen covering it had been torn away. When the police arrived she showed them the windows and she told them that she thought that the man who lived in the next room was the one who had broken into her home. Although she told the police that she did not think that he had returned to his room, she suggested that they knock on his door. However, they did not do so but took her to a hospital where a microscopic examination disclosed the presence of sperm.

The next time she saw the man was that Sunday night when he entered the building. She identified him to a friend and the police were again called. They arrested the defendant and brought him into her apartment where she again identified him.

Mason, who was 18 years of age, denied his guilt when arrested and denied it at his trial. At both times he said

he had not left his room from about 11:30 Saturday night to 2:00 p. m. Sunday. He testified that he worked until 4:30 p. m. Saturday afternoon, April 24th, and after work had gone to a tavern with several of his friends. He said he became intoxicated and two of them brought him home about midnight; that he went to bed and stayed there until about 1:00 p. m. Sunday when he got up and went to visit a relative.

In support of his contention that he was not proved guilty beyond a reasonable doubt, the defendant argues that his identification was uncertain, that it was brought about in an improper way and that the testimony of the prosecutrix was unbelievable. He points out that his identification was by a single witness; that this witness did not see his face; that she did not describe his facial features, or his physical characteristics or identify his voice; that she only described his clothing and that it was not until he put on similar clothing that she said he was the man who attacked her. He points out that there was no lineup of suspects; that on Sunday night he was brought into her apartment alone; that before this confrontation she had told the police she would know him if they clothed him as her attacker had been dressed; that after he came in they put his overcoat on him and held a cap over his face, and it was then that she said: "Yes, that's the man." He further points out that although she testified that she told the policemen who came to her apartment in the morning of her suspicions, they made no effort to apprehend him or even to question him and that these policemen were not called as witnesses to corroborate her testimony.

These arguments, naturally, overlook the evidence which is unfavorable to the defendant. It is undisputed that a rape took place. The rapist came in through the window; the doors of the apartment were locked; the prosecutrix unlocked the rear door to let her assailant out and she opened the front door to notify her neighbors.

31

There was no evidence that a ladder, a box or any other object was used to reach her window—the sill of which was variously estimated as being 6 to 9 feet above the ground. There was evidence that Mason's window was used. The man who came through the two windows showed familiarity with the occupants of the apartment. When the prosecutrix unexpectedly entered the living room he covered his face until the lights were extinguished. He came for the purpose of rape and knew that the woman who lived there was without male protection. He knew that the family had a dog. Before he left by the rear door he inquired if the "big dog" was in the back. Although the prosecutrix did not see his features, she saw that he was a colored man, that he wore a dark brown coat, that his cap was black with a little bill and that the knife he brandished had a light-colored handle. She thought she knew the man. She told the police that although she was not certain, she believed him to be her next-door neighbor—whom she had seen before in the hallway. She said she would know for sure if she saw him again—and the next time she did see him she exclaimed, "That's the man" and called the police. To make doubly sure, she asked the officers who arrested him to place his coat upon him and put his cap over his face. When this was done she again said, "Yes, that's the man."

There were additional circumstances which incriminated Mason: (1) immediately after the prosecutrix' complaint of being raped, her neighbor to whom she complained left the building to telephone the police and he met Mason coming in the vestibule. Mason was wearing a dark overcoat and a black cap with a little bill. (2) Later that day the prosecutrix' husband, who was among those visiting her, went to Mason's door and inquired if Mason had heard the commotion in his apartment. Mason said, "I don't know anything about your wife being raped." The husband replied, "I didn't say

anything about she being raped, how you come to that conclusion?" (3) When the policemen went to Mason's room to arrest him he denied possessing a black cap. (4) They found a black cap with a little bill tucked between the mattress and the springs of his bed. He said that that was where he kept his unused clothing and that he had forgotten about the cap. (5) A dark brown overcoat was found in his room. (6) A knife with a light-colored handle was also found there. The prosecutrix identified it as the one held by the rapist.

 The circumstance under which an identification is made affects its weight but does not destroy the evidence of identification. It is not necessary that a suspect be placed in a lineup (People v. Capon, 23 Ill2d 254, 178 NE2d 296 (1961)), and the fact that a suspect is brought alone before the victim who identifies him does not destroy the identification. People v. Wilson, 1 Ill2d 178, 115 NE2d 250 (1953). It is not improper to have clothing worn by a person suspected of a crime placed on that person to furnish an additional identifying element. People v. Pecho, 362 Ill 568, 200 NE 860 (1936); People v. Dixon, 81 NE2d 330, 225 NE2d 445 (1967).

██ The testimony of the prosecutrix was positive and her credibility was not impugned. Although she saw Mason in the light only a short time and did not see his face, his general appearance was familiar to her; she suspected who he was, and when she saw him again she was certain that he was the man who raped her. Her early suspicion and later certainty were substantiated by the surrounding circumstances, all of which established Mason's guilt beyond a reasonable doubt.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.