**People of the State of Illinois, Plaintiff-Appellee, v. Dennis Bielecki, Defendant-Appellant.**

**Gen. No. 51,213.**

First District, Fourth Division.
November 16, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Eldridge Hersey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant, Dennis Bielecki, was charged in a two-count indictment with indecent liberties with a child and attempted rape. He waived a jury and was tried by the court and found guilty of the indecent liberties charge. Judgment was entered on the finding and he was sentenced to a term of not less than two nor more than five years in the Illinois State Penitentiary. In this court defendant urges that the finding of the trial court was not supported by sufficient evidence.

Mrs. Linda Bielecki testified on behalf of the State that she was married to Dennis Bielecki, the defendant; that she had three children, two of whom were the defendant's, and that he was not the father of her three-year-old daughter Jeanie. She continued her testimony as follows: She lived with her husband and the three children in a third floor apartment consisting of a living

room, dining room, kitchen and three bedrooms. On June 10, 1965, the defendant, Mrs. Bielecki and the three children were present in the apartment. Mrs. Bielecki left at about 3 p. m. on that day to make a telephone call at a public booth two blocks away. When she returned in 10 or 15 minutes, her daughter Shirley was in the dining room and her son Dennis was on the couch. She walked through the house and into a bedroom where she saw her husband lying on the bed with Jeanie. She stated that she could not remember what clothing her husband had on below the waist; and that Jeanie "had a dress on. That is all."

Mrs. Jean DeSalvo, the mother of Mrs. Bielecki, testified that her daughter was 19 years old and was married to the defendant in 1962; that on June 10, 1965, she had a telephone call from the defendant in the afternoon when he was out on bond after having been arrested; that she had talked to him before on the telephone and recognized his voice. She testified that the following conversation took place:

> He said, "This is Dennis. I want to talk to you."
> I said, "I don't have anything to say to you." He said, "No, listen to me." He said, "Ask Linda to drop the charges." And I told him, "No, I would not." He said, "I cannot see why not, what all the fuss is about. After all, I didn't have it all the way in her, . . ."

On cross-examination Mrs. DeSalvo stated that she was not called to testify before the grand jury, although she had testified before a hearing in Midlothian; that she did not talk to any police officers about the conversation with the defendant or the case. She was asked whether or not she liked the defendant, and she stated she did not like him for what he did and that she would like to see her daughter get a divorce from him.

Dr. John F. Ryan, a physician and surgeon, also testified. He stated that on June 10, 1965, he was serving in the emergency room at Ingalls Hospital at 15500 South Page, in Harvey, Illinois; that on that date he examined Jeanie Bielecki at approximately 4 p. m. He stated that the child was approximately three years old; that the examination was a general physical and in particular an examination of the genitalia and a vaginal smear. He stated that the examination disclosed "contusions, that is bruises; redness; edema, that is, swelling about the introitus which is the opening, the orifice of the vagina; and a vaginal smear which I performed and inspection of the internal, or most presenting part of the vagina, and an attempted visualization of the perforation of the hymen, which I did not find."

On cross-examination Dr. Ryan testified that the bruises and redness, and swelling of the vagina could have come from the insertion of a male penis; that it could also come from a number of things, such as sliding down a banister, or from daily play where she had been straddling something like a chair. He then stated concerning the preceding testimony: "It is possible, but unlikely without contusion of the perineum as well, which is not present, the perineum being a portion of the body between the anus and the introitus or the vaginal opening, which is usually seen in a straddling injury." The doctor was then questioned as follows: "If perhaps sliding forward in a chair or something like that?" Answer: "Usually a pointed object to produce this particular thing." Question: "It is possible?" Answer: "I concede that."

Richard Graham, a police officer of the City of Harvey, testified that on June 10, 1965, he was on duty and had occasion to go to the apartment of the defendant. On arriving at the third floor rear porch he was met by Mrs. Bielecki. He then left the apartment with Mrs.

Bielecki and her child, Jeanie, and went to Ingalls Memorial Hospital where they stayed approximately half an hour, after which they went to the Harvey police station. He returned alone to the defendant's apartment at approximately 10 p. m., and called for assistance when he saw the defendant's car. Two other officers arrived three or four minutes later and they all went up to the third floor apartment; after receiving no answer to a knock on the door they entered the apartment through an open window; they found no one in the apartment, but found a small window open, leading onto the roof. They went through the window out onto the roof and searched the area, where they found the defendant "around the chimney." The defendant made no statement.

The testimony of Mrs. Linda Bielecki was given unwillingly. She stated that she did not want to testify against the defendant, and finally the court ruled that she be declared a court's witness, subject to cross-examination both by the State and by the defendant, because of her evasive answers and her repeated statement that she did not remember many things which had happened and could not remember whether she had testified before the grand jury, definitely fixing the crime upon the defendant.

 No evidence whatsoever was offered on behalf of the defendant. He here argues that the confession which Mrs. DeSalvo testified was made to her by the defendant should not be believed, because her testimony indicated that she was prejudiced against him. She had stated that she did not like him for what he did and would like to see her daughter get a divorce from him. The question is solely one of credibility. It is well-established law that the credibility of witnesses is a matter for the trial court to determine.

The defendant also argues that outside the confession there was no proof of a corpus delicti. This cannot be

45

seriously entertained because there was testimony in the record that Mrs. Bielecki found the defendant in bed with her daughter, who was wearing only a dress and no other clothing. In People v. Nachowicz, 340 Ill 480, 172 NE 812, it is said, at page 495:

"While it has been held that a defendant's confession, when the corpus delicti is not otherwise proved, is insufficient for a conviction, this does not mean that the corpus delicti must be proved by the evidence, aside from the confession, beyond a reasonable doubt. On the contrary, it was early held that it is the mere naked confession, uncorroborated by any circumstance inspiring belief in its truth arising out of the conduct of the accused or otherwise, which is held insufficient to convict, and the corroborating fact or facts in proof need not necessarily, independent of the confession, tend to prove the corpus delicti. (Bergen v. People, 17 Ill 426.) Direct and positive evidence is unnecessary to prove the corpus delicti, (Campbell v. People, 159 Ill 9,) and it is not essential that it should be established by evidence independent of that which tends to connect the accused with its perpetration. The same evidence which tends to prove one may also tend to prove the other, so that the existence of the crime and the guilt of the defendant may stand together inseparable on one foundation of circumstantial evidence. (Carroll v. People, 136 Ill 456.)"

In the case before us the evidence shows that the defendant was found in bed with his lightly-clad stepdaughter. When Mrs. Bielecki was being examined she was asked the following question by the State's Attorney: "Isn't it true that you saw your husband on the bed holding your daughter next to him with no clothes

on?" An objection to the question was overruled, and the witness replied: "I can't remember." She was asked: "Mrs. Bielecki, isn't it also true that your daughter's pants were pulled down from her waist?" She answered: "I can't remember. I just seen her laying on the bed."

Dr. Ryan had testified as to the bruised condition in which he found the sexual organs of the child at the time of his examination on the same day the alleged crime was committed. Officer Graham testified with reference to taking Mrs. Bielecki and the child to the hospital, and later returning to the defendant's apartment and arresting him on the roof of the building.

In People v. Dixon, 81 Ill App2d 330, 225 NE2d 445, at 343 the court said:

> "The rule is that if there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with the circumstances related in the confession, both may be considered in determining whether the corpus delicti is sufficiently proved in a given case. People v. Perfecto, 26 Ill2d 228, 186 NE2d 258. The question is whether the whole evidence proves the facts that a crime was committed and that the accused committed it."

In the instant case the corpus delicti was established. It is the law that an unexplained flight by an accused raises an inference of guilt. People v. Woods, 26 Ill2d 557, 188 NE2d 1; People v. Wright, 30 Ill2d 519, 198 NE2d 316. From the evidence the inference could be drawn that the defendant in the instant case had left the apartment for the purpose of avoiding arrest. In People v. Autman, 393 Ill 262, 65 NE2d 772, at 266 the court said that "Proof of flight by the accused in a criminal case is admissible as a circumstance tending to show consciousness of guilt." The court cited People

v. Herbert, 361 Ill 64, 196 NE 821, where it was held that flight, in criminal law, is defined as "the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest."

In this court the defendant argues that an equally reasonable explanation of his presence on the roof, behind the chimney, was that he went there to avoid the heat, as it was a warm night. Even assuming, sub arguendo, that such a conclusion could properly be drawn, it was a question for the trial court to determine, and if the court concluded that the defendant was on the roof for the purpose of evading arrest, it could properly be considered as indicating a consciousness of guilt on the part of the defendant.

The defendant also argues that the statement made by Mrs. DeSalvo concerning her conversation with him does not constitute a confession. It is difficult for this court to see how it could be construed in any other way.

Examining the record as a whole, it is apparent that the defendant was convicted beyond a reasonable doubt of the crime of taking indecent liberties with a child. The judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.