THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SIDNEY HUGHES, Defendant-Appellant.

First District (5th Division)   No. 82—1814

Opinion filed February 17, 1984.

James J. Doherty, Public Defender, of Chicago (Kendall Hill and John Lanahan, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Garritt E. Howard, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WILSON delivered the opinion of the court:

Following a bench trial, Sidney Hughes was convicted of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1) and received a prison term of 40 years. On appeal, he contends that: (1) the rape shield statute (Ill. Rev. Stat. 1981, ch. 38, par. 115—7) is unconstitutional; (2) the trial court improperly interrogated him about the complainant's credibility; and (3) the trial court abused its discretion by denying him a new trial. We affirm. The pertinent facts follow.

On January 8, 1982, the complainant, defendant, Janette King and four additional people were having a card party in King's apart-

ment. At one point, King and the complainant fell asleep in the bedroom. King later awakened and went into the kitchen. Shortly thereafter, the complainant came out of the bedroom crying and left the apartment but refused to tell anyone why she was upset.

The complainant, who was 18 years old, testified that she knew the defendant and had been friends with King for about four years. She stated that she came to King's apartment to visit but did not play cards. Instead, she engaged in a conversation with her friends, drank beer and fell asleep with King on the bed. She said that she awakened when she heard someone moving the television in the bedroom. Because the room was dark, she could only hear the person but recognized the individual as the defendant by the sound of his voice which instructed her to "shut your m----- f------ mouth." The defendant then climbed onto the bed and started choking the complainant with both hands. She unsuccessfully attempted to release his hands from her neck, started to cry and eventually acquiesced to his sexual demands.

The complainant further testified that when she called out for help during this ordeal, the defendant "slapped me real hard on the left side of my face *** and then, that's when he took his hand *** and put it over my mouth and told me to shut up and I told him I would be quiet." The defendant then removed her pants, panties and one of her boots and had intercourse with her for approximately 20 minutes during which time the complainant did not resist "so that he [defendant] can let me up so I can go." The defendant then turned on the light. Before he left he threatened the complainant and told her that she had "better not tell nobody."

Testifying further, the complainant stated that as the defendant was about to leave Janette King entered and asked what was wrong. The complainant accused King of ignoring her calls for help. She left the apartment and called the police from her apartment which was in the same building, two floors above. After explaining to the police what had happened the complainant took them to King's apartment where the defendant had remained. He was placed under arrest and the complainant was escorted to the hospital. The complainant then identified pictures of her neck and face which revealed the scars and scratches she said the defendant had inflicted, as well as a pair of torn panties.

On cross-examination the complainant testified that when she visited King in the past the defendant had attempted "to feel on" her but that she had never reported these incidents to the police. She further stated that on the night in question she drank one can of beer but had not smoked marijuana and had not been drinking earlier that

day. She further testified that she saw defendant take a pill that evening "to get high."

Under further questioning, the complainant gave conflicting testimony about whether she told one of the women who were present in the apartment that the defendant had raped her. First, the complainant stated that she did report the incident and then she said that she had not. Redirect examination disclosed that the complainant had not had sex with the defendant prior to the occurrence in question and that she did not talk to him at any time afterward.

Following this testimony the trial court examined the complainant. She testified that she lived with her mother, sister and brothers but that her mother was not at home when the complainant returned from King's apartment.

Next, investigating officer Isaiah Swanigan testified that when he interviewed the complainant in her apartment he noticed that the left side of her cheek was red and slightly swollen. He accompanied the complainant to King's apartment where the complainant identified the defendant and stated, "That's him, that's him right there." Swanigan testified that after he took the complainant to the hospital he noticed several scratches above her left breast.

Under cross-examination, Swanigan testified that the complainant told him that she awakened in King's bedroom when she felt the defendant pulling down her pants and unbuttoning her blouse. Swanigan also stated that although he could smell a faint odor of beer on the complainant's breath, she was not intoxicated, did not stagger and her actions did not indicate that she had had more than one can of beer.

It was then stipulated that the results of the complainant's vaginal examination which had been performed at the hospital revealed the presence of spermatozoa.

Following the denial of his motion for a directed verdict, defendant testified in his own defense. He stated that he had been living with King for about a year but that the complainant, whom he had known for approximately 12 years, was also his girlfriend. Defendant had visited the complainant in her apartment five or six times in the past.

Further testifying, defendant stated that the complainant entered King's apartment, approached him and said that she wanted him to accompany her on a "date," which the defendant understood to mean that she was going to engage in the act of prostitution but wanted the defendant to be present in case the patron refused to pay.

Defendant agreed to this arrangement. The two walked to a

nearby residence where the complainant instructed the defendant to wait outside. Fifteen minutes later she emerged and told him that she had taken $50 from a man inside. Defendant also testified that he asked the complainant for $25 for which she said she would give to him at King's apartment. According to the defendant, that had been the arrangement between them on a number of occasions in the past.

After the complainant and defendant returned to King's apartment, defendant noticed that everyone was "getting high" with marijuana, pills and liquor. He said that he then played a dice game in the bedroom and that the complainant placed bets on the side. Later, the defendant went to the store to purchase cigarettes. When he returned he again asked the complainant for his half of the money, but she refused and instead offered $12.50, explaining that she had "lost" some of her money. Defendant stated that when he took $25 from the complainant's hand she argued and kicked the defendant who responded by slapping her and pushing her. Defendant said that shortly thereafter he went to the store to purchase liquor. When he returned he walked to the bedroom, turned on the light and saw the complainant standing on the bed, crying. King then walked in the room and asked the complainant what was wrong. Defendant testified that the complainant did not answer King but instead told him that "You [are] going to get yours" and left. The complainant returned 20 minutes later and again asked defendant for her money. Defendant refused and the complainant left again. On her second return she was accompanied by the police. Defendant said that he had not engaged in sexual intercourse with the complainant that evening but had done so on a number of occasions in the past.

On cross-examination, defendant stated that he considered both King and the complainant as his girlfriends, that he was unemployed and that he supported his child (by King) by robbing people and the complainant's "dates." Defendant then testified that on the day in question he accompanied the complainant on a "date" at about 2:15 p.m. and then returned to King's apartment. He stated that he began drinking that day at approximately 11:30 a.m., took a "downer" and smoked marijuana. He admitted that after he and the complainant returned to King's apartment he resumed drinking and took another pill. Defendant said that he and the complainant argued about the money from the "date" because the complainant said she had lost some of the money in a dice game and could only give him $12.50 of his $25. When the defendant snatched $25 from the complainant's hand he said she kicked him and he slapped her. He said he did not grab her by the throat but that it was possible that he had scratched

her chest.

Next, the State submitted a motion *in limine* to preclude defendant from presenting testimony about the complainant's alleged reputation as a prostitute. Out of the presence of witnesses defendant argued that although he sought to prove that the complainant was a prostitute the purpose of the testimony was only to corroborate his story as to why he attempted to "collect part of his fee" from her.

Following arguments by both sides, the State's motion was granted and defendant rested his case. The State then submitted a certified copy of defendant's conviction record for rape and armed robbery, which the court admitted into evidence, reasoning that the defendant placed his credibility in issue by testifying in his own defense and that by admitting to various criminal activities his credibility had been destroyed. After hearing closing arguments by both sides, the court entered a finding of guilty.

Approximately one month after trial defense counsel filed a motion for a new trial which alleged that the evidence against the defendant consisted of a number of inconsistencies and contradictions. Additionally, counsel pointed out that defendant had written a post-trial letter to the trial judge in which he (defendant) stated that he had talked to the complainant a number of times on the telephone since the trial. Counsel argued further that he had an affidavit from Janette King and Gina Morales, who had also been in the apartment on the day in question, which stated that during one of the complainant's post-trial visits to King's apartment an argument ensued during which the complainant told King that she had "set [defendant] up. *** I got him locked up. Now I'm going to get you." The affidavits stated that the complainant hit King on the head with a hammer which injury resulted in King's hospitalization.

Defendant's motion for a new trial was denied. This appeal followed.

OPINION

■ Defendant first contends that the rape shield statute (Ill. Rev. Stat. 1981, ch. 38, par. 115—7) unconstitutionally denied him the right to present evidence that the complainant was a prostitute. The evidence would prove that the complainant had a motive to lie, defendant asserts, because they had a "business arrangement" whereby the defendant was, in effect, the complainant's pimp; the complainant's failure to adhere to the "business arrangement" led to an argument on the evening in question and resulted in her falsely accusing him of rape.

We have previously rejected constitutional challenges to the rape shield statute on the grounds urged by defendant. (*People v. Buford* (1982), 110 Ill. App. 3d 46, 441 N.E.2d 1235; *People v. Requena* (1982), 105 Ill. App. 3d 831, 435 N.E.2d 125; *People v. Bachman* (1981), 92 Ill. App. 3d 419, 414 N.E.2d 1369.) We likewise reject defendant's contention in the case at bar. The statute reads, in pertinent part, as follows:

"In prosecutions for rape or deviate sexual assault, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." Ill. Rev. Stat. 1981, ch. 38, par. 115—7(a).

In the pending case, contrary to defendant's assertions set forth above, defendant was, in fact, permitted to present evidence about the complainant's sexual activities. The record reveals that on direct examination, defendant testified as follows:

"Q. What happened next, Sidney?

A. After she [complainant] said she was going to take care of some business, I asked her, I say, 'What kind of business you fixing to go take care of?' She say, 'I got a date.' So I say, 'A date?' I say, 'Where is it at?' She say, 'Come and go with me.'

\* \* \*

Q. What happened, would you tell the Court what she meant?

A. She meant she was gong to sell her body.

Q. Okay; now, what, if anything happened; What do you mean sell her body?

A. She was going, she was going to have sex with a man."

Further, on redirect examination, the following colloquy ensued:

"Q. When you said [the complainant] and Gina said that they had to take care of business, what do you mean by that?

A. They were both going to sell their bodies out on Broadway \*\*\*."

Additionally, the complainant's credibility was disparaged during oral argument on defendant's motion *in limine* to preclude the admission of his arrest record. Defense counsel argued that:

"And when Sidney knows the [complainant's] boyfriend's name, knows how long she has been, he has been in jail, it just shows this whole crowd was together in all their activity, not that [the complainant] happened to go into a nest or den of thieves, and liars, rapists, and robbers. She was part of it. It is so obvious that she was part of this crew, not separate from it."

The foregoing testimony conclusively demonstrates that evidence concerning the complainant's character and sexual proclivities as well as the forthright accusation that she was a prostitute was admitted by the trial court. Defendant's contention that he was precluded from presenting such evidence is, therefore, wholly without merit.

Defendant further challenges the limitation placed on his cross-examination of Janette King. In this regard, he argues that King's testimony would have corroborated his story that the complainant was a prostitute and that they got into a fight over the defendant's share of the money. Thus, defendant urges, a "blanket rule" which precludes the admission of *any* evidence about the complainant's reputation is unconstitutional. Again, based on the evidence before us, we cannot agree.

The express language of the rape shield law precludes the admission of evidence of the complainant's prior sexual activity and reputation *except* when it concerns the past sexual conduct of the complainant *with the defendant*. (*People v. Cornes* (1980), 80 Ill. App. 3d 166, 175, 399 N.E.2d 1346.) In the pending case, however, defendant admitted that the sole import of the testimony he sought to elicit from Janette King would be that she had *heard* that the complainant was a prostitute and that she would not testify about any "business arrangement" between the defendant and complainant. Defendant stated that his other witness, Richard Goins, would refute the complainant's testimony that no one in the apartment was drinking or taking drugs.

The trial court's ruling on this issue was correct as the complainant's past sexual conduct with persons other than the defendant was irrelevant and would have little or no probative value on the question of whether she consented to have sexual relations with the defendant on the day in question. (*People v. Cornes* (1980), 80 Ill. App. 2d 166, 175.) Moreover, testimony concerning the complainant's alleged unchaste reputation falls within the express statutory prohibition of the rape shield law. (Ill. Rev. Stat. 1981, ch. 38, par. 115—7(a).) Additionally, the exclusion of this evidence did not prevent defendant from challenging or attacking the complainant's credibility or veracity or otherwise utilizing cross-examination as an effective tool of impeachment. It merely denied the defendant the opportunity to harass and humiliate the complainant at trial and divert the court's attention to issues not relevant to the controversy. (*People v. Cornes* (1980), 80 Ill. App. 3d 166, 175.) As the trial court properly observed, "The point involved here is, did a rape occur on that day. *** [Y]et, they [defendant's witnesses] are not here to testify that they heard anything about that business arrangement ***. [A]ll you [defendant] want to do is

come in and show that she [complainant] was in the business of being a prostitute." For the reasons stated above, we find that the court's ruling was proper.

Defendant's second contention on appeal is that the trial court improperly questioned him about the complainant's credibility. Specifically, defendant assigns error to the following colloquy:

"Q. Well, you heard her [complainant] testify here, didn't you?

A. Yes.

Q. She seemed to appear very sincere in what she was saying, didn't she?

A. Yes, sir.

Q. And you admit engaging in all these other illegal crimes and activities and you are saying that she is not telling the truth?

A. No, she isn't, your Honor.

Q. In other words, you admitted all these other crimes but you didn't commit the crime of rape as she said you did?

A. No, I didn't, your Honor.

Q. Even though she appears very sincere in what she is saying and very truthful?

A. No, your Honor, I didn't commit this crime.

The Court: All right, you can step down."

Defendant argues that the foregoing examination denied him a fair trial because the court improperly buttressed the complainant's credibility. We cannot agree.

Where a case is tried without a jury, the danger of prejudice from questions by the court is lessened. (*People v. Palmer* (1963), 27 Ill. 2d 311, 315, 189 N.E.2d 265; *People v. McCommon* (1979), 79 Ill. App. 3d 853, 868, 399 N.E.2d 224.) It has also been held that in a nonjury case, even a rather extensive examination by the trial court may be justified if the court has reason to believe that a witness is not telling the truth. (*People v. Dixon* (1967), 81 Ill. App. 2d 330, 336, 225 N.E.2d 445.) The court must not forget its judicial function, however, and assume the role of an advocate. *People v. McCommon* (1979), 79 Ill. App. 3d 853, 868, 399 N.E.2d 224.

In the pending matter, defendant cites our recent decision in *People v. Johnson* (1980), 83 Ill. App. 3d 586, 404 N.E.2d 531, where we ruled that the court's examination of the defendant, though improper, was not prejudicial. Defendant contends that in that case, which involved an attempted murder charge, there was sufficient evidence to support a finding of guilt beyond a reasonable doubt. In the case at

bar, defendant posits, the complainant's testimony was uncorroborated.

The trial judge in *Johnson* examined the defendant concerning his "regard for law enforcement," and whether he believed in the job his father was doing as a police officer. The court asked the defendant if he "didn't think seriously enough of his life" to report an altercation he had had with another man, Stewart, to his father or the police. Finally, the trial judge asked the defendant if two of the State's witnesses who testified as to what the defendant said to Stewart before he shot him were lying. When the defendant answered affirmatively as to one and affirmatively in part as to the other witness, the court asked, "Everybody is lying?" The defendant replied, "Yes." *People v. Johnson* (1980), 83 Ill. App. 3d 586, 587.

The court in *Johnson* concluded that the trial court's interrogation was improper for three reasons: (1) it asked the defendant to set himself up as the judge of the credibility of another witness; (2) it was directed to matters which did not bear upon the defendant's guilt; and, (3) it added nothing to the witness' testimony or their credibility. (83 Ill. App. 3d 586, 588.) The court ruled, however, that while it did not condone the court's interrogation, the defendant had not been prejudicially harmed because there was sufficient evidence in the record to support the trial judge's finding of guilt beyond a reasonable doubt. Moreover, the court ruled, the trial court's interrogation gave the State and the defendant an idea at almost the very end of the case as to how the trial judge viewed the evidence. 83 Ill. App. 3d 586, 589.

In the case at bar, the trial court never asked the defendant whether the complainant was lying. Rather, the court queried whether the defendant thought that the complainant "was sincere in what she is saying and very truthful." Such interrogation, in our judgment, is not improper and does not approximate the court's interrogation in *Johnson*. Here, there is nothing in the record to indicate that the court forgot its function as a judge. The court's questions did not indicate a bias, prejudice or hostility against the defendant; rather, the questions posed were appropriate to the court's role as the finder of fact. It may very well be that the court merely sought to clarify the defendant's version of the incident and attempted to elicit testimony as to why the complainant's story should not be believed. (*People v. McCommon* (1979), 79 Ill. App. 3d 853, 868-69, 399 N.E.2d 224.) These questions did not suggest an abuse of discretion. (*People v. Dixon* (1967), 81 Ill. App. 2d 330, 336, 225 N.E.2d 445.) Moreover, even if the court's examination could be found to be improper, it fell

short of causing prejudicial harm as the record indicates that the complainant's testimony was sufficiently corroborated by other evidence and remained essentially unchanged on direct and cross-examination.

■■■ The final question presented for review concerns the trial court's denial of defendant's motion for a new trial wherein the defendant stated that he had secured evidence which would prove that the complainant accused him of rape only to seek revenge against Janette King. This newly discovered evidence consisted of affidavits by King and her roommate, Gina Morales, which allege that approximately one month following defendant's arrest, the complainant argued with King and said that she had "set up" the defendant and that she was now "going to get [King]." The affidavits stated further that the complainant struck King on the head with a hammer.

Newly discovered evidence is not favored in the law. (*People v. Farris* (1980), 82 Ill. App. 3d 147, 157, 402 N.E.2d 629.) Whether to grant or deny a motion for a new trial based on newly discovered evidence is discretionary with the trial court, whose ruling will not be disturbed on review absent a showing of manifest abuse. (*People v. Reese* (1973), 54 Ill. 2d 51, 59, 294 N.E.2d 288.) The evidence must have been discovered since the trial and be of such a character that it could not have been discovered prior to the trial by the exercise of due diligence. (*People v. Farris* (1980), 82 Ill. App. 3d 147, 157, 402 N.E.2d 629.) Such evidence must also be of such affirmative character as to show facts which could probably produce a different result on a new trial. (*People v. Pruitt* (1974), 16 Ill. App. 3d 930, 936, 307 N.E.2d 142, *cert. denied* (1974), 419 U.S. 968, 42 L. Ed. 2d 184, 95 S. Ct. 232.) Evidence which merely discredits, contradicts or impeaches a witness does not afford a basis for the granting of a new trial. *People v. Carpenter* (1979), 74 Ill. App. 3d 770, 774, 393 N.E.2d 50.

Applying these standards to the case before us, we are of the opinion that the trial court did not manifestly abuse its discretion on this issue. The proposed testimony would not likely have changed the result of retrial since the sole effect of the evidence would have been to impeach the complainant's testimony that she engaged in sexual intercourse with the defendant against her will. Also, at most, the evidence was only cumulative to defendant's testimony that the complainant was angered over the fact that the defendant had forcibly taken his "share" of the money. Furthermore, the purported testimony is hearsay concerning an alleged event which, as the trial court recognized, there were no criminal charges filed or arrests made. (See *People v. Farris* (1980), 82 Ill. App. 3d 147, 157, 402 N.E.2d 629.) We therefore conclude that there is no basis for believing that the newly

discovered evidence would have changed the outcome of the trial.

For these reasons, we resolve the foregoing issues against the defendant and affirm the trial court's judgment.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.