**People of the State of Illinois, Plaintiff-Appellee, v. Obie Washington, Defendant-Appellant.**

**Gen. No. 49,945.**

First District, Fourth Division.

October 28, 1966.

Morton C. Kaplan, of Skokie, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

After a jury trial, defendant and his codefendant, Johnnie Allen, were found guilty of unlawful sale of narcotic drugs and each was sentenced to a term of 10 to 15 years. Upon an appeal by defendant Johnnie Allen, we reversed his conviction on the ground that the trial court had erred in not suspending the proceedings on Allen's motion for the purpose of conducting a hearing to determine his competency to stand trial. People v. Allen, 71 Ill App2d 283, 218 NE2d 837. In that opinion we noted that "on no fewer than 119 times defendant (Allen) interrupted the trial with ravings and abusive epithets directed at the judge, the State's Attorney, and even at his own counsel. The character of these vituperative remarks by defendant was such as to convince us that a bona fide issue was raised as to defendant's competency." While defendant Washington urges upon us several specific grounds why he too should be afforded a new trial,* we think that, regardless of whatever validity those grounds might have, reversal is required in this case for the underlying reason that a fair trial was impossible in proceedings so completely lacking in decorum.

Early in the trial both defendants (but particularly Allen) began disrupting the proceedings with disrespectful outbursts which the court chose to ignore. At one point Allen interrupted the questioning to say to the court, "You can charge me with contempt of court. I know I have said enough to be charged with contempt. I can't understand what you are waiting on." The conscientious trial judge was obviously sore beset to deter-

---

* Defendant raised as grounds for a new trial: the failure of the court to grant a severance; the refusal of the court to grant a motion for production of the grand jury minutes; and the refusal of the court specifically to instruct the jury that the testimony of a narcotics addict must be closely scrutinized.

mine how best to handle the situation, but apparently decided to remain passive throughout the entire trial. That this did not result in an orderly proceeding is demonstrated, for example, by one of Allen's accusations directed to the judge when he said, "This is a frame and you know it. You conspiring with the whole thing."

We have no doubt but what the well-intentioned trial judge maintained his own personal dignity to a remarkable degree under most difficult circumstances. But we also have no doubt that the dignity of the court as a forum for conducting the gravely important proceedings of a criminal trial was permitted to disintegrate into little more than a shambles. The two defense lawyers (appointed by the court) were most cooperative with the judge, as was the State's Attorney, but their operating efficiency and ability to concentrate must certainly have been reduced to a low level by Allen's raucous distractions. This fact was crystalized in the frustration of Allen's own counsel when he stated to the court:

> I think we ought to conduct a sanity hearing on this man. He is bothering me. *I can't follow this case.* And then a man who will bother his own lawyer, must be sick.

In attempting to evaluate the effect which Allen's conduct had on the trial, we have read the entire record. It is difficult to convey the atmosphere which appeared to have existed throughout the proceedings without making this opinion too long. As an example to indicate the relationship between Allen and the judge, which persisted from the outset of the trial to the end, we shall quote from the record the colloquy after the jury brought in its verdict. In doing so, we realize that this particular matter could not have affected the verdict, but it is cited as a passage which we consider typical.

10

THE COURT: Thank you very much, ladies and gentlemen, for your patience and so forth. I think you have done a fine job. I think that your verdict was a good one. I, too, listened to the case just as you did and if I were serving on the jury, I think I would have voted along with you.

DEFENDANT ALLEN: Sure you would, because you are a stinker.

THE COURT: So, thank you very much, and you are discharged.

DEFENDANT ALLEN: You are a bum; a tramp. Your day is going to come.

THE COURT: This is your last day, right? Thank you, and I hope you had a pleasant two weeks.

DEFENDANT ALLEN: I hope you drop dead on the way out.

THE COURT: Thank you very much.

(Whereupon the jury retired from the courtroom, after which, the following proceedings were had in open court, to-wit:)

DEFENDANT ALLEN: That is what you are, an old black-robed bum and your day is going to come.

Very few of the departures from normal decorum were attributable to the defendant Washington. It cannot be said, however, that part of the aggravation of the jury engendered by Allen's conduct might not have been transferred to his codefendant, nor would the source of

11

the improprieties be controlling in the climate of this trial.

A somewhat similar situation existed in People v. Saylor, 319 Ill 205, 213, 214, 149 NE 767, where a conviction was reversed because of the disrespectful and disorderly actions of counsel, principally the State's Attorney. The court summed up the situation, saying:

> The plaintiffs in error were entitled to a fair trial by the jury, uninfluenced by recriminations of counsel and claims of unfairness and prejudice on the part of the judge, and *where they have not had such a trial it is not for the court to say that they were properly convicted because they were guilty.* Conviction should be the result of a fair trial and not of the conclusions which a court of review may reach from a consideration of the evidence contained in the record where there has not been a fair trial. . . .
>
> The court should have exercised its authority during the trial to prevent successive repetitions by counsel on either side of their contemptuous conduct. One offense might perhaps be overlooked with no more than a rebuke, but the second should have met prompt punishment. *A judge presiding over a trial has power to compel decorum in his court room,* and it is his duty to see that the proceedings are conducted in such a manner as will inspire respect for law and the administration of justice. The Appellate Court stated that many improper remarks were made by the State's attorney and his assistant which could not be approved, "and if this misconduct had been confined to that side alone, we would deem it our duty to reverse the judgment." We do not agree with this view of the record, and *we are not willing to affirm a judgment based upon such an irregular, disorderly and turbulent proceeding* as

12

the record shows this trial to have been. . . . (Emphasis supplied.)

See also People v. Burson, 11 Ill2d 360, 373, 143 NE2d 239.

In People v. Arnold, 248 Ill 169, 177, 93 NE 786, the proper function of the court in this regard was said to be the application of the judge's power "to compel such decorum in his court as will inspire respect for the proceedings, and the exercise of such power, rather than mere advice and suggestion, is a duty."

██ ██ The measures required of the court in any given case for the preservation of order are many and varied, but they may even include, if necessary, the forcible removal of the defendant from the courtroom. This question was faced squarely by the court in People v. DeSimone, 9 Ill2d 522, 533, 138 NE2d 556 where it was said:

> The constitutional privilege relied upon (to be present at every stage of the trial) was conferred for the benefit and protection of an accused. Like many other rights, however, it may be waived. Thus where a defendant voluntarily absents himself from a courtroom and refuses to be present for further proceedings he is deemed to have waived his right and cannot claim any advantage on account of his absence. (People v. Smith, 6 Ill2d 414; People v. Connors, 413 Ill 386; Sahlinger v. People, 102 Ill 241.) The court did not, therefore, exceed its legitimate powers when it proceeded while Gordon De Simone voluntarily absented himself from the trial. The same result must follow under the circumstances attending this defendant's involuntary absence. It is obvious from the record that defendant's removal was necessary to prevent such misconduct as would obstruct the work of the court; such misconduct was, in turn, effective as a waiver of the defendant's

right to be present. The right to appear and defend is not given to a defendant to prevent his trial either by voluntary absence, or by wrongfully obstructing its progress.

We believe that, under all the circumstances, this defendant, too, should have a new trial, and for that purpose his conviction is reversed and the cause remanded to the Circuit Court.

Reversed and remanded.

DRUCKER, P. J. and McCORMICK, J., concur.