THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOUG KALAGIAN, Defendant-Appellant.

(No. 71-162;

Fifth District—July 6, 1972.

Kenneth L. Jones, of Defender Project, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville, (James W. Jerz and Edward N. Morris, both of Model District State's Attorneys Office, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

The defendant, Doug Kalagian, was tried by jury in the Circuit Court of St. Clair County on an indictment charging him with the crime of burglary. He was found guilty and was sentenced to the penitentiary for a term of not less than 10 nor more than 20 years. On appeal he contends that the trial court erred in failing to suppress his confession and in excluding certain evidence offered in his behalf. It is also claimed that the evidence was insufficient to establish his guilt beyond a reasonable doubt and that the sentence imposed was excessive.

We will turn first to defendant's claim that his confession was involuntary and should therefore have been suppressed. Defendant gave the following version of the circumstances surrounding his confession. After waiving extradition, he was, on Saturday May 22, 1970, brought to Illinois and was then questioned by a police investigator. During the course of this interrogation, the investigator, without at any time advising defendant of his right to remain silent and of his right to counsel, attempted to threaten defendant by indicating that he could get a "good long time" if he didn't "come across". Defendant did not make a statement at this time. The next time that he conversed with a police official was on the following morning, May 23, 1970, when he asked the same investigator for some cigarettes and was told that he would get cigarettes when he learned to cooperate with the authorities. The next contact he had was with the Chief Sheriff's Deputy who interviewed him on the following day, May 24, 1970. The deputy first warned defendant of his rights and then advised him that they had enough on him to get a conviction and sentence of 15 to 30 years but that if defendant cooperated the deputy would use his influence to try and get defendant 5 to 10 years. The deputy then showed defendant a copy of a statement signed by a co-defendant wherein defendant was linked to the crime in question. The deputy also indicated that if defendant didn't sign a statement it would be seen to that he was indicted for all the unsolved burglaries then pending. Defendant was then taken back to his cell and soon thereafter decided to sign a statement and was then taken to the courthouse where

he signed a written waiver of his rights and the confession. It is his testimony that the confession was merely a reiteration of what he had read in the co-defendant's confession together with what he had learned from conversations with that co-defendant and that he had no first hand knowledge of the crime nor was he in any way involved in its commission.

The testimony of the police officers involved is substantially in conflict with that of defendant. The investigator testified that when he interviewed defendant he warned him of his rights by reading off the so-called *"Miranda* card" and denied making any threats to defendant. The deputy admitted interviewing defendant for approximately 10 to 15 minutes on the day defendant ultimately gave his confession but denied any threats or coercion of any kind.

■■ The question before the trial court was whether the confession was made freely, voluntarily and without compulsion or inducement of any sort (*People v. O'Leary,* 45 Ill.2d 122, 257 N.E.2d 112), which presupposes a willingness to talk uninfluenced by force, coercion, promise or intimidation of any kind. (*People v. Nemke,* 46 Ill.2d 49, 263 N.E.2d 97.) The determination of this question is within the sound discretion of the trial court, the decision of which will not be disturbed on review unless manifestly against the evidence or unless there is a showing of a clear abuse of discretion. *People v. Newke,* 46 Ill.2d 49; *People v. Johnson,* 44 Ill.2d 463, 256 N.E.2d 343.

■■■ After a review of the evidence presented, both at the hearing on the motion to suppress and during the trial of the case, we do not feel that the trial court abused its discretion in ruling that the confession was voluntary and admissible. The defendant acknowledged that he understood the written waiver of his right to remain silent and his right to have counsel but now claims that the waiver and confession were signed as the result of threats of a long prison term, denial of cigarettes and his desire to get out of jail in order to consult with an attorney. We do not attach any significance to the alleged denial of cigarettes for a deprivation of this type would not, in our view, serve to vitiate the voluntary nature of a confession to a felony. The claimed threats of a long prison term and promises of leniency were contradicted by the police officers, and defendant himself stated that he had not signed the waiver and confession in order to get a lesser sentence but rather "to get out of county jail to call a lawyer and get some advice from father". In regard to this claim it is significant to note that there is no allegation that defendant ever requested an attorney or that he was denied access to an attorney. We find, in view of this fact and by virtue of defendant's admission that

he knowingly signed the waiver after having been advised of his right to counsel and right to remain silent on two occasions immediately prior to giving his confession, that the decision of the trial court was completely justified by the evidence.

■■■ Defendant next contends that he was denied a fair trial because the court refused to allow him to present evidence of alleged police harassment of defendant's family and evidence concerning the fact that defendant and his brother were similar in appearance and were often mistaken for one another. Defendant's father was called to testify in regard to the alleged police harassment and was asked whether he had himself had problems with the authorities and whether he felt some of that had "rubbed off" on his son. The court sustained an objection to the latter question. The witness then revealed to the jury that another of his sons had been shot and killed by the police to which testimony an objection was sustained. Such testimony is clearly irrelevant to the issues involved in the instant case and we find that the trial court properly excluded this evidence. We likewise find no error in the exclusion of the testimony of defendant's brother who would have testified, according to an offer of proof, that he and his brother were often mistaken for one another. Defendant by this testimony was apparently trying to cast doubt upon a witness's identification of defendant as a participant in the burglary. The jury, however, had the opportunity to view both defendant and his brother and were therefore in a position to assess for themselves any similarity in appearance and furthermore the brother denied any knowledge or participation whatsoever of the crime in question and there is in fact no claim or offer of evidence that the brother was so involved and the testimony of opinion of similarity of appearance was therefore irrelevant to the case before the court.

■■ Defendant also claims that there was insufficient credible evidence to establish defendant's guilt beyond a reasonable doubt, particularly in view of certain additional new-found evidence presented to the court at the hearing on defendant's post-trial motion. This argument is based upon the fact that one of the State's witnesses, the only identification witness, recanted some of her testimony after the jury had reached a verdict. At the trial of the case the witness merely testified that she thought defendant looked like the man she saw at the scene of the crime, but she failed to make a positive in-court identification of defendant. She did, however, testify that she had picked a picture out of a series of mug shots which were shown her, which picture was later identified as that of defendant. In recanting her previous testimony the witness reiterated her uncertainty concerning the identification and claims that the mug

shot she identified was that of defendant's brother and not defendant. This change of testimony was refuted by the police officer who had showed her the pictures and marked the one identified.

If the only evidence linking defendant to the burglary was the recanting witness's identification of him, defendant's point would be well taken. Here, however, the jury had before it defendant's voluntary confession and unrelated evidence that the defendant's car was used in the commission of the crime, which evidence we feel was sufficient, if believed, to establish defendant's guilt beyond a reasonable doubt.

■■ Defendant's last contention is that the sentence imposed, 10 to 20 years, was excessive. The Appellate Court has express statutory authority, in appropriate instances, to reduce the punishment imposed. The sentence imposed should be that which at the same time protects the public and provides the greatest potential for returning the offender to a useful and productive place in society. *People v. Brown*, 60 Ill.App.2d 447, 449, 208 N.E.2d 629.

■■ The sentence imposed by the trial court does not make sufficient provision for the possibility of rehabilitation and we, therefore, reduce the sentence to a minimum of five years and a maximum of fifteen years. *People v. Murdock*, 279 N.E.2d 159.

Judgment affirmed as modified.

EBERSPACHER, P. J., and JONES, J., concur.