THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARLAN DeSAVIEU, Defendant-Appellant.

(No. 54494;

First District (3rd Division)—April 5, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Ira Silbar, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

Following a jury trial the defendant, Harlan DeSavieu, was convicted of aggravated battery and attempt murder. He was sentenced to serve from 19 to 20 years in the penitentiary consecutively to prior sentences imposed for other crimes.

Late on the afternoon of May 1, 1968, the complainant, William Hartfield, age 15 was playing basketball with some friends in the gymnasium of the Englewood Methodist Church located at 64th Street and Stewart Avenue, Chicago. While the game was in progress boys, whom Hartfield and his friends knew to be members of the Disciples street gang, entered the gymnasium and had a conversation with them. Shortly after these youths departed, Hartfield and four of his companions left the gymnasium to return to their homes. They proceeded south on Stewart to the corner of 65th Street, where they were stopped and frisked by two Chicago police officers, who found that they had no weapons. They then walked one-half block west on 65th Street and turned south down an alley to take a short cut. They had gone a short distance when a car drove up and three older youths, recognized by them as members of the Disciples, got out and attacked Gregory Thurmond, one of Hartfield's friends who had fallen behind. Among the three assailants was the defendant, Harlan DeSavieu.

The assailants twisted Thurmond's arm behind his back and punched him in the body. Hartfield and his companions asked them to leave Thurmond alone and went to the aid of their friend. As they approached, the assailants turned on them. DeSavieu and one of his associates drew guns; DeSavieu pointed his at the face of Otis Harris, another of Hartfield's friends, and ordered him to back up. Harris pulled away and eluded another youth who swung at him. Other boys, including the ones who had spoken to Hartfield and his friends in the gymnasium, came into the alley to aid the assailants. Thurmond and Harris managed to break away and escape.

DeSavieu grabbed Hartfield and tried to shoot him, but his gun did not fire. Hartfield broke away and DeSavieu shot at him again; this time his gun fired and the bullet struck Hartfield in the back. Hartfield heard four more shots as he ran down the alley. He turned his head and saw DeSavieu still pointing the gun; the bullets struck garbage cans around him. He ran approximately one block before he fell to the ground. Boys who were playing baseball nearby assisted him into a taxicab which brought him to his home.

Prior to the arrival of the ambulance which took him to a hospital, Hartfield was questioned by police. He had difficulty talking due to the seriousness of his injury but he was able to describe what happened. He was hospitalized for three months and operated upon three times.

After the shooting Ernest Boyd, who was with Hartfield in the gymnasium and at the affray, spoke to the police. The mother of Otis Harris also spoke to them and a bulletin was issued for DeSavieu's arrest. When

he was seen by the police he ran and they chased him. He fled into a building which was surrounded by the police before he surrendered.

DeSavieu's defense was an alibi. He did not testify himself but two girls stated that they spent the late afternoon and evening of May 1, 1968, with him while he supervised them and ten others in cleaning a recreational center. They testified that he and they engaged in this activity on the first day of each month.

■■ The defendant first contends that the State's evidence failed to establish beyond a reasonable doubt that he was the one who committed the offense. He argues that the poor visibility in the alley, the confusion there during the encounter, the fright of Hartfield and his friends, the conflict in their testimony, the lack of a complete physical description of the perpetrator of the offense, the failure to conduct a line-up and a tainted photographic identification, contributed to his mistaken identification.

The shooting took place shortly after 7:00 P.M. on the first day of May. Hartfield and Boyd testified that it was light outside. No contrary evidence was produced by the defense. There undoubtedly was confusion in the alley and Hartfield, Boyd and Harris were admittedly scared. They had every reason to be. Their assailants belonged to a feared gang; they had been approached by other gang members in the gymnasium a short time before and at least two of their attackers were openly armed. But the confusion and their fright did not prevent them from recognizing DeSavieu. Boyd and Harris were acquainted with him and Hartfield stared at him face to face. The rapidity of the events in the alley explains the minor discrepancies in their testimony and their fear explains their hesitancy in describing him to the police. Their accounts of the occurrence were in substantial agreement, their credibility was not shaken and their identifications were positive.

■■ The failure to place the defendant in a line-up was not prejudicial to him. At the time he was captured, one month after the crime, Hartfield was in the hospital. He could not have attended a line-up, and since Boyd and Harris were acquainted with DeSavieu it was needless for them to point him out. Moreover, it is not necessary that a suspect be placed in a line-up. (*People v. Mason* (1967), 86 Ill.App.2d 28, 229 N.E.2d 392.) The photographic identification to which the defendant objects had no effect upon his conviction and, since he was responsible for the testimony, he has no right to complain about it. The day after Hartfield was shot and soon after he regained consciousness, following a four-hour operation, police showed him two pictures and asked him if either was his assailant. One of the pictures had a facial resemblance

which he recognized but he could not say whether it was a photograph of the man who shot him. The pictures were not produced at the hearing on the motion to suppress nor introduced into evidence at the trial. Indeed, the jury was informed of the dubious pre-trial identification only because of questions asked Hartfield by the defense. A defendant who procures or invites the admission of evidence cannot complain about it on appeal. *People v. Burage* (1961), 23 Ill.2d 280, 178 N.E.2d 389.

■■ The defendant next contends that the State's failure to either call as witnesses or satisfactorily explain the absence of persons who saw the crime or police officers who were in the area when it was committed, raises a negative inference that these witnesses would testify favorably for the defense. This contention is without merit. Although other individuals were at or near the scene of the crime, the State was not bound to call them to testify. The State is not obligated to produce every witness to a crime, and the failure to do so does not raise the presumption that the testimony would be unfavorable to the prosecution. *People v. Jones* (1964), 30 Ill.2d 186, 195 N.E.2d 698; *People v. Gilyard* (1970), 124 Ill.App.2d 95, 260 N.E.2d 364.

■■ Certain actions of the trial court such as allowing testimony of Hartfield's physical condition, operations and treatment, permitting references to the Disciples gang, and restricting cross-examination are asserted to have been so prejudicial as to require reversal. First, the medical testimony: On direct examination the physician who attended Hartfield in the hospital after the shooting told of his great blood loss and the nature of his operation. However, the defendant's attorney questioned the physician at length on cross-examination about the operation and Hartfield's condition immediately thereafter. Those aspects of the doctor's testimony to which the defendant now objects were the very ones his counsel expatiated. Therefore, he has no standing to complain that the jury was informed of the details of Hartfield's condition and treatment.

■■ Second, the gang membership testimony: The prosecution's theory was that the assault in the alley and the shooting of Hartfield were acts of gang warfare. It was established that members of the Disciples gang had a conversation with Hartfield and his companions in the gymnasium. Because the defendant was not present, the trial court excluded the contents of the conversation from evidence. When the defendant and two other members of the same gang attacked Thurmond without apparent provocation soon thereafter, the youths who had been in the gymnasium rushed into the alley and participated in the attack. The prosecution may prove the motive of the defendant where it can be done. (*People v. Novotny* (1939), 371 Ill. 58, 20 N.E.2d 34.) The evi-

dence that the defendant was associated with the Disciples and that he was acting with other gang members in the assault upon Hartfield and his friends provided a motive and an explanation for the seemingly inexplicable attack.

■■■ Third, the alleged restriction of cross-examination: The latitude to be allowed in the cross-examination of witnesses rests in the discretion of the trial court, and it is only in a case of clear abuse of such discretion resulting in manifest prejudice to the defendant that a court of review will interfere. (*People v. George* (1971), 49 Ill.2d 372, 274 N.E.2d 26; *People v. Halteman* (1956), 10 Ill.2d 74, 139 N.E.2d 286.) We have carefully reviewed the record to discern whether the defendant was prejudiced by the trial court's sustaining objections to questions asked by the defendant's counsel. We find that no prejudice occurred.

■■■ It is claimed that in his closing argument the prosecutor made comments to the jury concerning facts not in evidence and that he appealed to the sympathy of the jury in an attempt to divert its attention from the true course of deliberation. Improper remarks by a prosecutor do not constitute reversible error unless they result in substantial prejudice to the defendant. (*People v. Nilsson* (1970), 44 Ill.2d 244, 255 N.E.2d 432; *People v. Jackson* (1969), 116 Ill.App.2d 304, 253 N.E.2d 527.) We have studied the argument in its entirety and find that reversal is not warranted. The prosecutor's comments were uniformly based upon the evidence or legitimate inferences drawn from the evidence. (*People v. Hairston* (1970), 46 Ill.2d 348, 263 N.E.2d 840.) We note that most of the remarks now alleged to be prejudicial were not objected to when they were made. The supposed errors not complained about are deemed to have been waived. *People v. Donald* (1963), 29 Ill.2d 283, 194 N.E.2d 227.

■■ The purpose of review in a criminal case is not to determine whether the record is perfect, but whether the defendant has had a fair trial under the law, and if the evidence established his guilt beyond a reasonable doubt. (*People v. Haygood* (1965), 60 Ill.App.2d 70, 208 N.E.2d 373.) DeSavieu suffered no substantial prejudice at his trial, and his conviction will be affirmed.

■■■ The punishment fixed by the legislature for attempt murder is an indeterminate term of one to twenty years. (Ill. Rev. Stat. 1969, ch. 38, par. 1—7(e).) The defendant's sentence (19 to 20 years) is the maximum possible under the statute. The sentence is to run consecutively to a 15-to-20-year sentence previously imposed upon him. The one year difference between the minimum and maximum sentence unduly limits the discretion of those who must determine whether, or when, the defendant should be paroled. We will, therefore, reduce the minimum sen-

tence to 15 years. *People v. Monroe* (1972), 6 Ill.App.3d 1051, 286 N.E. 2d 824.

Affirmed as modified.

McNAMARA and McGLOON, JJ., concur.