THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARLAN DeSAVIEU, Defendant-Appellant.

(No. 54327;

First District (2nd Division)—October 2, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Michael Fitzpatrick, Nunzio D. Tisci, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Nicholas D. Taubert, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Harlan DeSavieu and a co-defendant, Van J. Ross, were jointly charged with two counts of attempt to murder and two counts of aggravated battery. They were tried by the same jury, found guilty of all the charges and sentenced to the penitentiary. Ross took a separate appeal and in an accompanying opinion, we have affirmed his two convictions for attempt murder. See *People v. Ross*, 14 Ill.App.3d 923. This appeal is by DeSavieu and arises from the same material facts.[1]

## I.

At about 4:30 P.M. on May 23, 1968, Eugene Shanklin, age 17, and Melvin Baxter, age 14, were waiting for a "jitney" cab at East 58th Street and South Park Avenue in the City of Chicago.[2] They saw some boys come out of a nearby building. Moments later, they heard one or two shots. A tree branch fell to the ground. Thinking that someone was shooting at them, Shanklin and Baxter ran approximately six blocks to a point near East 52nd Street and Bowen Drive in Washington Park.

In his testimony, Shanklin said that he knew appellant. In fact, they had been acquainted for about nine months. He said that he also knew Van Ross. They had known each other for about five years. Although Melvin Baxter testified that he knew Ross, he said he did not know DeSavieu before May 23, 1968.

Shanklin testified that after he and his companion had run some six blocks away from the shooting at 58th Street, he saw a boy behind a tree; that the boy came out, shot him and then shot Melvin Baxter in

---

[1] In the balance of this opinion, we will refer to DeSavieu either by name or only as "appellant."

[2] South Park Avenue has been renamed "Dr. Martin Luther King Drive," in honor of the late civil rights leader who was assassinated in Memphis, Tennessee on April 4, 1968.

the stomach and in the back. Shanklin told the jury that after he was wounded, he tried to cross East 51st Street and reach a hospital there, but a brown and white "* * * car drove up and tried to stop me from going to the hospital." Melvin Baxter also testified and described the shooting. In court, he and Shanklin identified appellant as the boy who shot them. Shanklin identified Ross as the driver of the car that tried to stop him from reaching the hospital. During cross-examination, Shanklin said that when he first saw the police, he told them that appellant shot him and that Ross was with him. Then, Shanklin was asked, "Did you ever say that Tyrone [Clark] was the one that shot you?" He answered, "Yes, in the police station."

In support of Shanklin and Baxter, the prosecution called three witnesses who gave testimony concerning the shooting. Fifteen-year-old Tyrone Clark told the jury that in the afternoon of May 23, 1968, while in a drug store at 58th Street and ·Calumet Avenue, he saw Eugene Shanklin and Melvin Baxter walk by. He went to an apartment on East 58th Street, there found appellant and Ross and told them he had seen the two youths. Appellant said, "[C]ome on." Clark and appellant left the apartment. They went through an alley and some gangways until they reached South Park Avenue. They saw Shanklin and Baxter at the "jitney" cab stop. Clark testified that appellant "pulled out a gun * * * got behind a porch and fired twice." Shanklin and Baxter ."ran through the park." Clark said that he and appellant then returned to the apartment. When they got there, appellant went into a bedroom with Ross. Clark recalled that he could hear Ross say, "We can catch them in my car." Ross's car was brown and white. Clark said that appellant and Ross left the apartment. About fifteen minutes later, they returned. Then, in the presence of appellant and several others, Ross told them that "[i]t was a wipe-out set, you should have been there. Harlan [the appellant in this case] shot down Melvin [Baxter] like a piece of paper and then he shot Eugene [Shanklin] while he was running."

Terrence Bell, who Clark recalled was among his companions the afternoon of May 23, 1968, described his presence in the apartment when appellant and Ross left. He said that about half an hour later, they returned and Ross told them about the "wipe-out set" and that "we all should have been there." According to Bell, appellant recounted in his presence that he and Ross got in the car and then "* * * saw Eugene and another boy. He [appellant] said he jumped out of the car and the boys started running and he started shooting."

Clarence Britts was called and he told how he was in Washington Park with his family the afternoon of May 23, 1968, between 5:00 and 5:30 P.M. when he "saw two youngsters running through the park

* * *. I turned around to open up a bottle of pop and I heard shots. * * * I looked for the boys and I found one falling down the bridle path."

The defense called four witnesses: (1) Mary Wright: She testified that she lived in the apartment on East 58th Street. She knew Tyrone Clark. He had been in her apartment on May 23, 1968, but left about 4:00 P.M. She knew that Shanklin was in the neighborhood that day. She was acquainted with Van Ross, and she recalled that he was in her apartment the day in question, but it was before Shanklin arrived in the area. As to appellant, all she could say was that "I don't remember seeing him in the apartment that day." (2) Richard Lis: He appeared and told the jury that on May 23, 1968, he was a Chicago police detective and questioned Eugene Shanklin after he was shot in Washington Park. Lis was asked, "Do you know if Shanklin identified Tyrone Clark as the boy who shot him?" Lis answered, "At one point, yes." (3) Van Ross: He admitted knowing Shanklin and Baxter and having seen them the afternoon of May 23 near East 58th Street. He knew the owners of the apartment on East 58th Street, but he was not in the apartment after he saw the two youths. He did not see appellant on May 23. He denied having made the statements attributed to him by Clark and Bell or in any way being involved in the shooting of Shanklin and Baxter. (4) Appellant: He denied knowing Shanklin or Baxter. He said that he did not see them on May 23, 1968. He denied ever being in the apartment described by Tyrone Clark, and he denied ever having fired any shots at or assaulting either Shanklin or Baxter.

After hearing the evidence, receiving its instructions and listening to closing arguments, the jury deliberated and found appellant guilty on the two counts of attempt to murder and the two counts of aggravated battery. He was sentenced to concurrent terms for the four offenses. From these facts, appellant presents seven issues for our review.[3]

## II.

*First.* Whether he was proven guilty beyond a reasonable doubt.

Appellant contends that the State's evidence "* * * reveals many contradictions, discrepancies and improbabilities." For example, he argues that when Shanklin first spoke with the police, he did not tell them that appellant was his assailant, even though, according to him, he had known appellant prior to the shooting of May 23. Appellant insists that Shanklin initially identified another prosecution witness, Tyrone

---

[3] Without reflecting in any way on their relative importance, we have rearranged the order and rephrased the wording of the issues as they are presented in appellant's brief.

Clark, as his assailant. In addition, he points to the testimony of Melvin Baxter and argues that Baxter had only a glance at the person who shot him and based his identification on appellant's hairstyle.

Turning to the testimony of other State's witnesses, appellant maintains that two of them, Tyrone Clark and Terrence Bell, were interested in seeing him convicted because they too had been arrested for the shooting of Shanklin and Baxter. In addition, Tyrone Clark was an admitted accomplice because he, as a participant, went to East 58th Street and South Park Avenue on the day in question where appellant "pulled out a gun * * * and shot twice." Finally, appellant argues that the State did not call all persons whom Clark and Bell said were in the Wright apartment the afternoon of May 23 when Ross and appellant allegedly made the incriminating statements about having shot Shanklin and Baxter.

■■ In our judgment, the record does not support appellant with regard to Shanklin's first identification of his assailant. However, if it did, the failure of a complaining witness, until a few days later, to say that an accused was his assailant, or even denying that an accused was his attacker, only affects the weight to be given his testimony. (*People v. Hines,* 131 Ill.App.2d 638, 267 N.E.2d 696.) In fact, the weight to be given what a complaining witness says, taking into consideration such discrepancy or inconsistency as may accompany his testimony, is a question for the jury. *People v. Johnson,* 123 Ill.App.2d 69, 259 N.E.2d 621.

Appellant's identity as perpetrator of the assault on Shanklin and Baxter was a question of fact. (See *People v. Stephens,* 297 Ill. 91, 130 N.E. 459; compare *People v. McMiller,* 410 Ill. 338, 102 N.E.2d 128.) As to the uninvolved persons in the apartment on East 58th Street, the State was under no obligation to call all of them as witnesses. (Compare *People v. Clay,* 38 Ill.2d 17, 230 N.E.2d 191; *People v. Martin,* 35 Ill.2d 289, 220 N.E.2d 170.) Therefore, it was for the jury to consider what was said by the witnesses who were called, Shanklin, Baxter, Clark, Bell and the others, and from all the evidence, determine the credibility that was to be given their testimony. This, of course, included consideration of the opportunity each had to observe or any interest, bias or prejudice which the jury should have considered in determining their credibility. (See *People v. Emerling,* 341 Ill. 424, 173 N.E. 474; I.L.P. Witnesses § 201; 98 C.J.S. Witnesses § 462.) We will defer to the jury's determination, unless the proof is so unsatisfactory as to cause a reasonable doubt of the accused's guilt to appear. *People v. Daily,* 41 Ill.2d 116, 242 N.E. 2d 170.

■■ In this case, the jury heard the testimony of Shanklin and Baxter who positively identified appellant and described how he attacked and

shot them. Their testimony was materially corroborated by Clark, Bell and Britts. This evidence, though in conflict with that of the defense, was sufficient, if believed by the jury, to prove appellant's guilt beyond a reasonable doubt. *People v. Watkins,* 46 Ill.2d 273, 263 N.E.2d 115.

*Second.* Whether, on the facts of this case, the concurrent sentences imposed on appellant for two attempts to murder and two aggravated batteries were proper.

Appellant was sentenced to serve two concurrent terms of 15 to 20 years for attempt murder and two of 9 to 10 for aggravated battery. He contends that according to the State's evidence, the four offenses arose out of the same conduct: that is, the shooting in Washington Park when Shanklin and Baxter were wounded. Therefore, appellant argues that imposition of sentences for attempt to murder and aggravated battery violate the rule that "[w]hen a person is convicted of two or more offenses which arise out of the same conduct, he cannot be sentenced for both, either concurrently or consecutively." *People v. Sykes,* 10 Ill.App.3d 657, 295 N.E.2d 323; *People v. Duszkewycz,* 27 Ill.2d 257, 189 N.E.2d 299; Ill. Rev. Stat. 1969, ch. 38, par. 1—7(m).

The State counters appellant's contention with the argument that the attempts to murder Shanklin and Baxter were not made in Washington Park; rather, they were made earlier in the afternoon when at the "jitney" cab stand, East 58th Street and South Park Avenue, appellant "pulled out a gun  *  *  *, fired twice  *  *  *" and a tree branch fell. Therefore, the State argues that the attempts to murder at 58th Street were conduct separate from the conduct which appellant and Ross committed when Shanklin and Baxter were wounded in Washington Park.

It must be observed that in the presentation of its case the State never advanced the theory that an attempt to murder Shanklin and Baxter was made at 58th and South Park. In fact, a scrutiny of the prosecution's opening statement and its closing argument to the jury reveals that the State never claimed at the trial that the *locus criminis* of the attempts to murder was the "jitney" cab stand. The record shows that when the State furnished appellant with a list of witnesses, it added a paragraph which told him that the offenses charged against him were committed in Washington Park, sometime between 6:10 and 6:20 P.M. Moreover, we have examined the testimony of Eugene Shanklin and Tyrone Clark concerning the incident near the cab stand. All that Clark could say was that appellant pulled out a gun and fired twice. All that Shanklin could say was that he heard shots and an overhead branch fell to the ground.

■■ The essence of the crime known as attempt murder is a specific

intent to take human life. (*People v. Henry,* 3 Ill.App.3d 235, 278 N.E.2d 547.) To sustain a charge of attempt to murder, the prosecution must prove facts which if established after a death has resulted would prove the accused guilty of murder. (*People v. Herbert,* 340 Ill. 320, 172 N.E. 740; *People v. Payton,* 2 Ill.App.3d 693, 276 N.E.2d 775.) Hence, in this case, proof that on the occasion in question appellant fired a gun twice and the branch of a tree fell to the ground would not prove murder had death resulted. (See *People v. Downen,* 374 Ill. 146, 28 N.E.2d 91; compare *People v. White,* 7 Ill.App.3d 1084, 288 N.E.2d 705; *Acuff v. State* (Ark. 1972), 484 S.W.2d 698.) For these reasons, it is apparent that appellant did not attempt to murder Shanklin and Baxter at the "jitney" cab stand. He attempted to murder them when, according to the two victims, he stepped from behind a tree, shot them and wounded both. The shooting and the wounding were one conduct; and because there were two victims, the same conduct produced two attempts to murder and two aggravated batteries. In such a case, there can be only sentences for the most serious crimes, the attempts to murder. (*People v. Horne,* 110 Ill.App.2d 167, 249 N.E.2d 282.) Accordingly, if concurrent sentences are imposed for multiple offenses, the sentence for the lesser crime will be vacated. (*People ex rel. Walker v. Pate,* 53 Ill.2d 485, 292 N.E.2d 387; *People v. Peery,* 8 Ill.App.2d 372, 225 N.E.2d 730; *People v. Thompson,* 3 Ill.App.3d 684, 278 N.E.2d 1.) Therefore, we conclude that the sentences imposed on appellant for the aggravated batteries were improper.

*Third.* Whether certain statements made during selection of the jury by Ross, the co-defendant, deprived appellant of a trial by an unbiased jury.

This issue arises from four courtroom incidents caused by appellant's co-defendant during selection of the jury. The record shows that when they were arraigned, appellant and Ross requested counsel; so the Public Defender was appointed to represent them. On the day of trial, and outside the presence of prospective jurors. Ross demanded that he be furnished counsel other than the Public Defender. The trial court rejected this demand. Selection of the jury began. While this was going on, Ross declared that he had discharged the Public Defender and was demanding other counsel. The trial court overlooked the comment, and selection of the jury continued. Then, Ross asked the court for an opportunity to speak, saying, "It's just that I'm at this time, you know, without counsel for the defense." The trial judge called Ross to one side and admonished him not to make statements on the subject of counsel. Selection of the jury was resumed, but when Ross reiterated his objections to the Public

Defender as his lawyer, the trial judge ordered him removed from the courtroom.

After the jury was selected and sworn, the assistant public defender, on behalf of appellant, made a motion for a mistrial, but the court denied it. Ross was allowed to return to the courtroom. He apologized to the trial judge for his behavior, explaining that his conduct had been motivated by a misunderstanding concerning a continuance that had been made of record without his knowledge. The apology was accepted. Ross then requested an opportunity to apologize to the jury. This was done; and the trial proceeded with presentation of the evidence.

We have examined the statements made by Ross together with the circumstance they created and conclude that his conduct was not disruptive. This case is plainly distinguishable from *People v. Saylor*, 319 Ill. 205, 149 N.E. 767 and *People v. Washington*, 77 Ill.App.2d 8, 222 N.E.2d 150 where the insane behavior of one defendant was held to deprive another of a fair trial. Even if the conduct of Ross were disruptive, although regrettable and deplorable, it could not be sized upon, in and of itself, as a justification for the retrial of appellant's case. (See *United States v. Bamberger* (3 Cir. 1972), 456 F.2d 1119; compare *United States v. Marshall* (2 Cir. 1972), 458 F.2d 446.) The statements by Ross did not deprive appellant of a trial by an unbiased jury. Therefore, the trial court's denial of the motion for mistrial was correct. "If such conduct by a co-defendant on trial were held to require a retrial it might never be possible to conclude a trial involving more than one defendant; it would provide an easy device for defendants to provoke mistrials whenever they might choose to do so." *United States v. Aviles* (2 Cir. 1960), 274 F.2d 179, 193, *cert. den. sub. nom. Evola v. United States* (1960), 362 U.S. 974, 4 L.Ed.2d 1009, 80 S.Ct. 1057.

*Fourth.* Whether the trial court abused its discretion when it ruled on objections to questions asked during cross-examination of State witnesses.

Appellant points to seven instances in which he contends the trial court abused its discretion when it sustained objections that restricted his cross-examination of State witnesses. We have examined these instances and find that the questions asked by appellant's counsel either touched on the credibility of the witness or sought to raise matters that would have been impeaching. The record shows that the information which would have been developed by these questions was before the jury.

■■ The latitude to be enjoyed in the cross-examination of witnesses rests in the discretion of the trial court, and only where there is clear

abuse of discretion, resulting in manifest prejudice to a defendant, will a reviewing court interefere. (*People v. George*, 49 Ill.2d 372, 274 N.E. 2d 26.) We have reviewed the record in order to discern whether appellant was prejudiced by the trial court's sustaining of objections to the cross-examination of State witnesses. We find that no prejudice occurred. (*People v. DeSavieu*, 11 Ill.App.3d 529, 297 N.E.2d 336.) It is our conclusion that in the instances complained about, the trial court did not abuse its discretion.

*Fifth.* Whether the trial court abused its discretion when it examined appellant in the course of his testimony as a defense witness.

Appellant testified in his own defense. When he was cross-examined, he told the jury that he had been with Ross at several meetings of the "Disciples." Earlier, Ross had testified that the last time he had seen appellant, before May 23, 1968, was on a Tuesday in May at a meeting of the "Disciples." After his direct, cross and redirect examinations, appellant was asked the following questions by the trial judge:

"Q. You say that you were at several meetings with Ross?

A. Yes sir.

Q. Was that meetings of the Disciples?

A. Yes sir.

Q. What is the Disciples?

A. They are an organization. Youth organization. Devil's Disciples.

Q. Devil's Disciples?

A. Yes sir.

Q. Is this a social club or what is it?

A. You could say so, yes sir.

Q. Did Melvin Baxter or Shanklin belong to this or both of them?

A. Not that I know of."

Appellant contends that this examination was prejudicial because it highlighted his membership in a gang, the "Devil's Disciples," and put irrelevant and inflammatory evidence before the jury.

■■ The record shows, however, that appellant's counsel failed to object to this questioning. Therefore, whether this court-examination of appellant was prejudicial is a question that must be regarded as waived in this appeal. (*People v. King*, 50 Ill.App.2d 421, 200 N.E.2d 411.) The failure of appellant's counsel is understandable. One of the issues at the trial was whether appellant was with Ross on May 23, 1968. When and where the two were together were facts relevant to this issue. The mention by both of them of the "Disciples" and their meetings made necessary a clarification of that testimony. "[A] trial judge is not re-

quired to sit mute even in a jury trial; he may ask questions to elicit the truth and clarify the issues." (*People ex rel. Adams v. Sanes,* 41 Ill.2d 381, 386, 243 N.E.2d 233.) Therefore, the examination of appellant by the trial judge was not an abuse of discretion.

*Sixth.* Whether the closing arguments to the jury by two assistant State's Attorneys deprived appellant of a fair trial.

Appellant contends that he was deprived of a fair hearing and an unbiased jury determination of the case against him by improper and inflammatory remarks made during the closing arguments of two assistant State's Attorneys. Appellant argues that in at least five instances during their arguments to the jury, the lawyers for the State repeatedly referred to his membership in the "Disciples," called him and his co-defendant "devils" and "thugs," suggested to the jurors that they could convict the defendants because of their gang membership and accused defense counsel of throwing "a smoke screen" in an attempt to degrade prosecution witnesses. Appellant maintains that these five instances deprived him of a fair trial before the jury.

Altered by the State's counterargument, we have examined the record of these instances and find that appellant did not object to three of the remarks when they were made. Therefore, objections to them were waived. (*People v. Donald,* 29 Ill.2d 283, 194 N.E.2d 227; see *People v. Burton,* 6 Ill.App.3d 879, 286 N.E.2d 792.) As to the other two, our study leads us to conclude that they were prosecutors' comments which were either based on the record or were inferences legitimately drawn from the evidence. (See *People v. Hairston,* 46 Ill.2d 348, 263 N.E.2d 840.) In any event, remarks of a prosecutor will not constitute reversible error unless they result in substantial prejudice to an accused. (*People v. Nilsson,* 44 Ill.2d 244, 255 N.E.2d 432.) Appellant has not shown how he was prejudiced by what was said to the jury. Therefore, he was not deprived of a fair trial by the closing arguments of the two assistant state's attorneys.

*Seventh.* Whether the sentence of 15 to 20 years for attempted murder is excessive.

Appellant contends that the sentence imposed on him, 15 to 20 years for attempt murder, is excessive and should be reduced by us through exercise of powers we have under Supreme Court Rule 615(b)(4). (Ill. Rev. Stat. 1969, ch. 110A, par. 615(b)(4).) He argues that at the time of his trial he was 18 years of age. The maximum allowable sentence for attempted murder is 20 years. (See Ill. Rev. Stat. 1969, ch. 38, par. 8—4 (c).) Therefore, appellant insists that society's interest in his rehabilitation requires a substantial reduction in the maximum and minimum of the sentence imposed.

We have authority, in an appropriate case, to reduce a sentence imposed in the trial court. (*People v. Kalagian*, 6 Ill.App.3d 582, 285 N.E.2d 510; Supreme Court Rule 615(b)(4), Ill. Rev. Stat. 1969, ch. 110A, par. 615(b)(4).) However, this authority is reserved for the case in which the punishment imposed is excessive. (*People v. Pahl*, 124 Ill.App.2d 177, 260 N.E.2d 405.) It is a power we should exercise only when a sentence "'* * * is in manifest disproportion to the nature of the offense or 'greatly at variance with the purpose and spirit of the law.'" *People v. Swet*, 132 Ill.App.2d 468, 469, 270 N.E.2d 646.

In this case, the aggravation and mitigation hearing revealed that in June 1967 appellant was convicted of "a strong-armed robbery [sic]" and sentenced to four months in Vandalia. In April 1968, he was put on one-year supervision "for battery [sic]." Taking notice of our proceedings, we know that in *People v. DeSavieu*, 11 Ill.App.3d 529, 297 N.E.2d 336, this court affirmed appellant's conviction for aggravated battery and attempt murder which he committed the afternoon of May 1, 1968 when he shot a 15-year-old boy in the back. Under these circumstances, the 15-to-20-year concurrent sentences imposed on appellant for two attempts to murder are not excessive.

### III.

For these reasons, the two concurrent sentences of 9 to 10 years for aggravated battery are vacated. In all other respects, the judgments are affirmed.

Vacated in part; affirmed in part.

DRUCKER and HAYES, JJ., concur.