THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALEXANDER ROGERS, Defendant-Appellant.

(No. 73-86; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

Fifth District—January 16, 1975.

Robert E. Farrell and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant, Alexander Rogers, was charged with the offenses of rape and robbery in the Circuit Court of St. Clair County. Defendant made a statement to the police in which he admitted taking the alleged victim's

purse but denied raping her. The public defender was appointed to represent him and on September 13, 1972, a hearing was held on defendant's motion to suppress the confession. The motion was denied and a jury trial was held the same day, and the defendant was found guilty on both charges. On January 3, 1973, a sentencing hearing was held and the defendant was sentenced to serve a term of 4 to 10 years on each charge with the sentences to be served concurrently. The appeal followed.

The initial contention of the defendant is that he was not proved guilty beyond a reasonable doubt. Thus it is necessary to summarize the factual situation surrounding the alleged offenses.

The prosecutrix and her husband, a Fairview Heights police officer, had been having a disagreement while driving through East St. Louis. The prosecutrix, who was of Japanese descent and had lived in the United States approximately 3 years, left their automobile on the evening of July 4, 1972, in that city. Her husband tried to persuade her to return to the vehicle and then started to drive way. He then saw the prosecutrix walking with a Negro man. The man then approached the car and asked if the husband and the prosecutrix were arguing. The prosecutrix refused to return to the car and after the husband lost sight of her, he drove to Collinsville to leave their little girl with his mother.

The prosecutrix had walked away from the man, but he followed her. She walked under a bridge at which time a man grabbed her and pulled her into a "shadow place." There were no lights under the bridge. He told her to take her clothes off, pulled her underwear down, and had intercourse with her. The man then threatened to kill the prosecutrix, took her purse and ran away.

The prosecutrix then sought help and encountered a Mr. Brown and two mechanics at a gasoline station. They brought her to Mrs. Brown. At this point the prosecutrix informed Mrs. Brown of the incident that had just occurred. Mrs. Brown testified that the prosecutrix had mud on her dress, had only one shoe and one stocking on, that her undergarment was only on one leg and that her hair was all messed up.

The police were called as well as the prosecutrix's husband. Her husband then took her to the hospital where she was examined by a physician. No medical testimony was introduced at the trial.

The following day, July 5, 1972, defendant was arrested. He testified that he had spent the previous evening shooting firecrackers with neighborhood children. Defendant's mother testified that her son had been popping firecrackers that evening and that he had been "in and out." Mrs. Rogers testified that her son spoke to her at about 11:35 on the evening of July 4, 1972.

Statement of the defendant was read at the trial and in it defendant

admitted robbing a "white female lady" of her purse near the scene of the crime; but it denied that he had had intercourse with the lady he robbed.

The husband of the prosecutrix identified the defendant as the man whom he had talked to the evening of the alleged crime. The prosecutrix testified that the man she talked to on the street was the same man who attacked her under the viaduct. At the trial the prosecutrix was asked four times if the man who attacked her was in the courtroom before she identified the defendant. The State contends that this was partially explained by the fact that she had difficulty with the English language. She also said that it was dark under the viaduct and that she could not clearly see her attacker.

■■ The testimony of a complaining witness in a rape prosecution is sufficient to support a conviction if it is clear and convincing; if not clear and convincing it must be corroborated. *People v. Scott*, 407 Ill. 301, 95 N.E.2d 315.

The testimony of the husband corroborated that of the prosecutrix in that it tended to prove that the defendant was with the prosecutrix.

■■■ The testimony of Mrs. Brown concerning the appearance of the prosecutrix bolsters the testimony of the prosecutrix that the rape had occurred. Mrs. Brown testified that the prosecutrix told her that she had been raped. The defendant claims that such hearsay testimony should have been excluded. The statement to Mrs. Brown met the requirements of a spontaneous exclamation. The statement referred to an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there was an absence of time in which to fabricate, and the statement related to the circumstances of the occurrence. (See *People v. Damen*, 28 Ill.2d 464, 193 N.E.2d 25.) The testimony of Mrs. Brown also would be admissible under the corroborative statement rule because the prosecutrix's complaint to Mrs. Brown was made without inconsistent or unexplained delay, it was not made as a result of a series of questions and the complainant was a witness at the trial. The testimony of Mrs. Brown was properly admitted and provided further corroboration for the testimony of the prosecutrix. Thus there was sufficient evidence for the jury, as the trier of fact, to find the defendant guilty beyond a reasonable doubt of rape.

The defendant next contends that it was error to deny his motion to suppress the confession. The arresting officer stated that he read the defendant his Miranda rights at the defendant's home in the presence of defendant's mother on July 5, 1972. (*Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602.) The defendant admitted that the officer informed him of his right to remain silent and that there was "something

else he said." The statement signed by the defendant contained a pre-printed warning of his *Miranda* rights, and also included the statement that the signer, having been advised of his rights, voluntarily agrees to make a statement. The preprinted form also contained the statement, "I have not been threatened or mistreated in any fashion nor have any promises of leniency been made to me in return for making this statement."

The defendant maintains that the record does not reflect that he understood his rights or that he expressly and understandingly waived those rights. Defendant's mother testified that the arresting officer did not inform her son of his *Miranda* rights at her home. Defendant testified that the arresting officer told him to make a statement or else he would get 20 years. The officer denied making any threats or promises to the defendant.

■■ The State has the burden of demonstrating that the confession was voluntary. The burden is that of a preponderance of the evidence, and the trial court need not be convinced beyond a reasonable doubt. (*People v. Jackson*, 41 Ill.2d 102, 242 N.E.2d 160; *People v. Harper*, 16 Ill.App.3d 252, 305 N.E.2d 680.) Here there was a conflict in the testimony and as such should be resolved by the trier of fact who is in the best position to judge the credibility and observe the demeanor of the witnesses. Such a determination is within the sound discretion of the trial court and should be sustained unless contrary to the manifest weight of the evidence. (*People v. Higgins*, 50 Ill.2d 221, 278 N.E.2d 68; *People v. Kalagian*, 6 Ill.App.3d 582, 285 N.E.2d 510.) We cannot say that the decision of the trier of fact was against the manifest weight of the evidence, and it was not error to deny the defendant's motion to suppress the statement.

The next contention of the defendant is that he was denied a fair trial because of improper comments made by the prosecutor. The prosecutor referred to the defendant as a "vulture" and also referred to the alleged offense as a "bastardly crime." The prosecutor also stated that the area in which the alleged offense took place was a "high crime area." The prosecutor additionally said that the husband was "stupid" to allow his wife to leave the car at night and that "[h]e's paid a price. He is paying a price. He will continue to pay the price of his stupid actions."

■ ■ The defense counsel did not object to any of these statements and such a failure to make a timely objection constitutes a waiver of the objection. *People v. Skorusa*, 55 Ill.2d 577, 304 N.E.2d 630; *People v. Moore*, 55 Ill.2d 570, 304 N.E.2d 622.

■■ If the remarks are considered "seriously prejudicial" this court may relax the waiver rule. (*People v. George*, 49 Ill.2d 372, 274 N.E.2d 26.)

Improper remarks must result in substantial prejudice for there to be reversible error. *People v. McCorry*, 51 Ill.2d 343, 282 N.E.2d 425. Here we find no reason to relax the waiver rule.

■■ The final contention of the defendant is that the sentence imposed for robbery, 4 to 10 years, was excessive. Robbery is a Class 2 felony requiring that "(3) for a Class 2 felony, the minimum term shall be 1 year unless the court, having regard to the nature and circumstances of the offense and the history and character of defendant, sets a higher minimum term * * *." (Ill. Rev. Stat., ch. 38, par. 1005—8—1.) The trial court made no findings as contemplated by the statute as to why the minimum sentence on the robbery charge should be in excess of 1 year. The defendant was 17 years of age at the time of the commission of the offense and had no serious prior record. We therefore reduce the sentence imposed for robbery to a minimum of 1 year and a maximum of 3 years pursuant to our authority under Illinois Supreme Court Rule 615(b)(4) (50 Ill.2d R. 615(b)(4)).

Affirmed as modified.

G. MORAN, P. J., and CARTER, J., concur.