THE PEOPLE *ex rel.* ROBERT B. MARTIN, Relator-Appellant, *v.* RICHARD J. ELROD, Sheriff of Cook County, Respondent-Appellee.

First District (5th Division) No. 62183

Opinion filed March 12, 1976.

Frederick F. Cohn, of Katz, Hirsch & Wise, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This is an appeal from a circuit court order which dismissed, after hearing, a petition for writ of *habeas corpus* filed by relator, Robert B.

Martin, who was arrested in Chicago in May, 1974 by the Federal Bureau of Investigation on an extradition warrant issued by the Governor of California which charged him with the offense of robbery and rape in the State of California on April 2, 1973. He is in the custody of the Sheriff of Cook County, Richard J. Elrod.

The thrust of relator's petition is that he was not in California on April 2, 1973, and that he is not the Robert B. Martin named in the fugitive warrant.

Respondent Elrod presented one witness in opposition to the petition, a Mrs. Norton, a resident of San Clemente, California, and former mother-in-law of relator. She testified that he was in her home sleeping and eating on March 30, April 1 and April 2, 1973; that he went out after the evening meal on April 1 but did not know the time he returned, but that on the morning of April 2, 1973, she drove him to Newport, California some 20 to 25 miles from San Clemente and left him off at a bus station. She further stated that he said on parting that he wanted to see someone in Newport and probably then would go to Los Angeles. She also testified that an investigating officer came to her home, had conversations with her and found a shirt that appears to have been identified by the victim of the crime as the shirt worn by the relator at the time of the offense.

It should be noted here that Mrs. Norton had custody of the relator's 14-year-old son and that relator and his former wife had had some discussion regarding taking custody of the boy from her, but the record is silent as to which of the parents would get the custody.

Relator presented five witnesses; namely, a Mrs. Tessmer, his mother, a resident of Spring Grove, Illinois; Roberta Marchi, a co-worker of Mrs. Tessmer; a Larry R. Moore and his wife, Joan; and Yana Martin, his former wife. He testified in his own behalf. All witnesses placed him in Illinois on April 2, 1973, except Yana Martin, who in April, 1973 resided in California. Their testimony was predicated on having seen him in either Spring Grove, Illinois, or Highland Park, Illinois, on April 2, 1973. Yana Martin testified that she phoned Mrs. Norton on March 19, 1973, and was told that relator had been there in her home but had left. Relator testified that on April 2, 1973, he lived with his mother and stepfather in Spring Grove, Illinois. He further stated that he did not know that he was charged with an offense in California until he was arrested in May, 1974.

OPINION

■■ In this appeal relator contends that the trial court erred in preventing cross-examination of Mrs. Norton on the issue of her bias. We

disagree. The objections to questions, "You are concerned, aren't you that he might try to regain custody of the boy," and "you want to see Robert Martin go to jail, don't you?" were sustained by the trial court. Later, however, in cross-examination she stated that she was not prejudiced against relator in any way and that her parting with him in Newport, California on April 2, 1973, was entirely friendly. The State did not object to that testimony. We hold that relator was not prejudiced by Mrs. Norton's total testimony and that the judge did not abuse his discretion in ruling on the evidence. *People v. DeSavieu,* 14 Ill. App. 3d 912, 303 N.E.2d 782; *People v. Matthews,* 7 Ill. App. 3d 1059, 289 N.E.2d 98.

■■■ Next relator contends that the trial court imposed an impossible burden of proof upon him. Again we disagree. The weight of authority holds that in a *habeas corpus* proceeding challenging the validity of extradition the petitioner is required to prove beyond a reasonable doubt that he was not in the demanding State when the offense was committed. (*People ex rel. O'Mara v. Ogilvie,* 35 Ill. 2d 287, 220 N.E.2d 172.) In *O'Mara* the court said:

> "[O]ne held under a Governor's warrant will not be discharged where the evidence on the question of his presence in or absence from the demanding State is merely contradictory. Rather, to entitle one to release on *habeas corpus,* it must appear from the evidence beyond all reasonable doubt, that the relator was without the demanding State when the offense was committed." (Citations omitted.) (35 Ill. 2d 287, 289.)

In the case at bar, the State maintains first that it was the function of the trial judge to determine the credibility of the witnesses and second, having so determined, the trial judge, applying the burden of proof, justifiably found that the relator herein had not established his absence from the demanding State beyond all reasonable doubt. In so doing he followed the rule in the *O'Mara* case, and found the evidence presented was merely contradictory and not sufficient to overcome the prima facie case established by the Governor's warrant.

■■ Thirdly, relator contends the trial court erred by permitting the State to utilize a prior consistent statement of a witness to corroborate her in-court testimony. We reject this contention and agree wtih the State's position that since the relator failed to set forth a proper specification of either the prior consistent statement claimed to have been improperly admitted or the in-court testimony allegedly corroborated, this court is precluded from considering the issue.

In his reply brief relator included his Appendix A of trial testimony on pages 13, 14 and 15 as follows:

"THE COURT: Overruled.

THE WITNESS:* A. And I dropped him off at the bus station there.

MR. GLENVILLE: Q. I see. Now, Mr. Martin's ex-wife, did she live in Newport, California?

A. No.

Q. Now, did you have —Approximately on the 2nd day of May, 1973, did you have a visit from one Detective Wiberg of the San Clemente Police Department?

A. Yes.

MR. BRODY: I object to this, if the court please.

THE COURT: Overruled.

MR. GLENVILLE: Q. And you had a conversation with him?

A. Yes.

Q. And did you learn, from the conversation that he was investigating the commission of a crime that occurred on April 2nd, 1973?

A. Yes.

MR. BRODY: I object to this, if the court please.

THE COURT: Overruled.

MR. GLENVILLE: Q: And did he at that time describe the individual that was involved in this crime?

A. No.

Q. All right. What was the nature of his investigation, when he talked to you on approximately May 2nd, 1973?

MR. BRODY: I object to that, if the court please.

THE COURT: Overruled.

MR. BRODY: Judge, there is no foundation laid for a question of that kind.

MR. GLENVILLE: This is a habeas corpus.

MR. BRODY: I know that it's a habeas corpus.

THE COURT: The question is very casually put.

MR. GLENVILLE: Q. All right, Mrs. Norton,—

THE COURT: What did he tell you?

MR. GLENVILLE: Q. (Continuing)—What did he tell you?

THE COURT: All right.

MR. BRODY: I would object to that, for the record, your Honor.

THE COURT: Overruled.

---

* The witness is Mrs. Norton (footnote added by respondent).

THE WITNESS: A. He wanted to know if Robert Martin was at my house, was in.

MR. GLENVILLE: I didn't hear the last part.

A. He wanted to know if Robert Martin was at my house.

Q. I see. And did he ask you any other question, on the date of April 2nd, 1973?

MR. BRODY: I object to leading the witness, Judge.

MR. GLENVILLE: I'm certainly not leading the witness, Judge.

THE COURT: Overruled.

THE WITNESS: A. He asked me when I had seen him last. I don't know if he mentioned that I had told him that he was not there at that time.

He said, 'When had you seen him last?' So I told him that I had seen him on April 2nd, 1973.

MR. BRODY: I object to this hearsay, Judge.

THE COURT: Overruled.

MR. GLENVILLE: Q. Did Detective Wiberg tell you why he was investigating Robert B. Martin?

A. Yes.

MR. BRODY: I object, Judge.

THE COURT: Overruled.

THE WITNESS: A. Yes.

MR. GLENVILLE: Q. And what did he tell you?

A. He said that there had been a robbery and rape in San Clemente."

In our judgment the original defect was not cured. Not once had counsel for the relator stated his grounds for the court's overruling his objections, the issue now raised on appeal. It is too fundamental to require a citation that a ground for objection not stated in a trial court cannot be raised for the first time on appeal.

In accordance with the foregoing, the dismissal of the petition is affirmed and the cause remanded to the trial court with directions that the relator be remanded to the messenger of the demanding State.

Affirmed, with directions.

LORENZ, P. J., and SULLIVAN, J., concur.